**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**HOLDEN FARMS, INC.,**
**a Minnesota corporation;**
**ROD GARNESS; EUGENE**
**C. WARD; RANDY SWANSON;**
**RICK ANDERSON,**
**d/b/a CIRCLE A. FARMS; TIM SANBORN;**
**AJ FARMS, a Minnesota General Partnership;**
**DENNIS KOFSTAD; MARLIN KRUCKEBERG;**
**and PORK AVENUE, L.L.P.,**
**a Minnesota Limited Liability Partnership,**

**CIVIL NO. 00-CV-785 (DSD/SRN)**

**Plaintiffs,**

**v.**

**REPORT AND RECOMMENDATION**

**HOG SLAT INC., a North Carolina**
**Corporation; BCM MANUFACTURING, LTD.,**
**a Canadian Corporation; and**
**DOUBLE L GROUP LTD., an Iowa Corporation,**

**Defendants.**

---

Dustan J. Cross, Esq., on behalf of the Plaintiffs.

Robert G. Hensley, Esq., and Paul R. Dieseth, Esq., on behalf of Defendant Hog Slat, Inc.

Gordon H. Hansmeir, Esq., on behalf of Defendant BCM Manufacturing, Ltd.

Randall E. Gottschalk, Esq., on behalf of Defendant Double L Group Ltd.

---



FILED NOV 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on August 31, 2000. Defendant BCM Manufacturing, Ltd., brought a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and a Motion to Dismiss for Insufficient Service of Process pursuant to Fed. R. Civ. P. 12(b)(5). These motions have been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Doc. Entry No. 28.)

For the reasons set forth below, this Court recommends that Defendant BCM Manufacturing, Ltd.'s motions to dismiss be denied in all respects.

## A. BACKGROUND

Between 1994 and 1997, Plaintiffs contracted for the construction of ten hog nursery barns from Defendant Hog Slat, Inc. ("Hog Slat"). (Compl., Doc. 1, at ¶¶ 21-40.) Hog Slat is a North Carolina corporation engaged in the business of selling and constructing hog confinement facilities. (Id., at ¶¶ 1-40.) Hog Slat installed Filter-Eeze Maxima plastic flooring in Plaintiffs' nurseries. (Id.) The Filter-Eeze flooring product is manufactured by Defendant BCM Manufacturing, Ltd. (" BCM"), a Canadian corporation, and distributed exclusively in the United States by Defendant Double L Group ("Double L"), an Iowa corporation. (Id., at ¶¶ 13-14; see also Pls.' Supplemental Mem. in Opp'n

to Def. BCM's Mot. to Dismiss, Doc. No. 34, at p. 5.) Hog Slat installed the flooring in the nurseries pursuant to specifications supplied by BCM and Double L. (Compl., Doc. No. 1, Ex. A.)

Prior to the execution of the contracts for the sale of the nurseries, Plaintiffs met with Wendell Burge of Hog Slat and Double L President Norb Borcherding to discuss the flooring. (Compl., Doc. 1, at ¶ 19.) At the meeting, Mr. Borcherding gave Plaintiffs a letter, which stated that he was "a representative of BCM Manufacturing and our product, Filter-Eeze flooring." (Compl., Doc. No. 1, Ex. B.) Mr. Burge and Mr Borcherding also provided Plaintiffs with a prepared brochure describing the benefits of BCM flooring. (Compl., Doc. No. 1, Ex. A.) The brochure represented that the flooring came with a "full 10 year non-prorated" warranty. (Id.) As a result of these representations, Plaintiffs agreed to contract with Hog Slat for the construction of nursery barns using BCM flooring. (Compl., Doc. No. 1, at ¶ 23.)

After the contracts were finalized, BCM shipped the flooring directly to Plaintiffs. (Borcherding Aff., Doc. 32.) BCM paid for the delivery of the products to Plaintiffs' nurseries and provided the common carrier with directions and maps to the nursery locations. (Id., see also Pls.' Supplemental Mem. in Opp'n To Def. BCM's Mot. to Dismiss, Doc. No. 34, at p. 3.) According to BCM shipping records, BCM also shipped products directly to at least twelve other Minnesota purchasers between 1994 and 1997. (Id.)

In the summer of 1998, Plaintiffs noticed that the flooring was buckling in three of the nurseries that were installed in 1994. (Compl., Doc. No. 1, at ¶41.) Plaintiffs allege that the nursery hogs would catch their feet in the buckled floor or use their snouts to lift up the exposed slats caused by the buckling. (Id.) In several instances, it is alleged that the hogs were able to remove a slat entirely, causing several hogs to fall into the manure basin underneath and die. (Id.) Plaintiffs contacted Hog Slat and Double L to discuss remedial measures. (Id. at ¶42.) Hog Slat installed expansion joints in an attempt to halt the buckling. However, the repair was not successful. (Id.)

In June 1999, Plaintiff Kent Holden attended the National Pork Expo in Des Moines, Iowa. (Kent Holden Aff., Doc. 11, at ¶5.) Plaintiff Holden spoke with representatives from Hog Slat, BCM, and Double L about the buckling problem. (Id.) After approximately two months of negotiations, BCM agreed to sell Plaintiffs replacement flooring for the nurseries built in 1994, to deliver the flooring to the nursery sites, and to provide a technical assistant to help install the flooring. (Compl., Doc. 1, Ex. B.) BCM President Warren Hutchings visited the nursery site for three days and oversaw the installation of the replacement flooring. (Kasper Aff., Doc. No. 13, at ¶4.)

On March 6, 2000, Plaintiffs brought this suit against Defendants Hog Slat, BCM, and Double L claiming that the buckling in the floors was caused by the use of non-galvanized, inferior quality steel as support beams.

(Compl., Doc. 1, at ¶43.) Defendant BCM seeks to dismiss the case against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5). Defendant Double L opposes the Rule 12(b)(2) motion and Plaintiffs oppose both the Rule 12(b)(2) and Rule 12(b)(5) motions.

In a March 31, 2000, Pretrial Scheduling Order, Magistrate Judge Boylan permitted Plaintiffs to conduct limited discovery relating to matters placed at issue in Defendant BCM's motions to dismiss. The Court has considered this additional material in deciding Defendant BCM's motions.[1]

**B. <u>PERSONAL JURISDICTION</u>**

In its first motion, Defendant BCM seeks to dismiss the case against it for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). To survive a motion to dismiss for lack of personal jurisdiction, Plaintiffs need only make a prima facie showing of personal jurisdiction over Defendant BCM. <u>See</u> <u>Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas,</u>

---

[1]Rule 12 of the Federal Rules of Civil Procedure states that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b)6. But this conversion provision only applies to a Rule 12(b)(6) defense. <u>See</u> <u>Watlow Elec. Mfg. Co. v. Patch Rubber Co.</u>, 838 F.2d 999, 1000 (8th Cir. 1988)(noting that a court may rely on supporting affidavits when assessing a challenge to personal jurisdiction under Rule 12(b)(2)); <u>see also</u> C. Wright & A. Miller, <u>Federal Practice and Procedure</u>, §§ 1364, 1366 (1990). Therefore, this Court will review the additional affidavits without converting the Rule 12 motions into motions under Rule 56.

S.A., 51 F.3d 1383, 1387 (8th Cir. 1995). In deciding whether this Court has personal jurisdiction over a nonresident Defendant, a two-step process is applied. The Court must determine: (1) whether the Minnesota long-arm statute is satisfied, and (2) whether the exercise of jurisdiction over Defendant BCM would violate the due process clause of the Fourteenth Amendment. Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., 63 F.3d 694, 696-97 (8th Cir. 1995).

**1. Step One: Minnesota's Long Arm Statute**

Minnesota's long arm statute, section 543.19, extends personal jurisdiction over a nonresident who does any of the following:

> (a) Owns, uses, or possesses any real or personal property situated in this state, or
> (b) Transacts any business within the state, or
> (c) Commits any act in Minnesota causing injury or property damage, or
> (d) Commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:
>> (1) Minnesota has no substantial interest in providing a forum; or
>> (2) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice; or
>> (3) the cause of action lies in defamation or privacy.

Minn. Stat. § 543.19, subd. 1. Section 543.19 has been interpreted to extend jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the United States Constitution. Northwest Airlines, Inc.

v. Astraea Aviation Servs., Inc., 111 F.3d 1386, 1390 (8th Cir. 1997). Because Minnesota's long arm statute extends jurisdiction to the maximum limit consistent with due process, a district court need only ensure that the requirements of due process are satisfied. Wessels, Arnold & Henderson v. National Med. Waste, Inc., 65 F.3d 1427, 1431 (8th Cir. 1995). Therefore constitutional limits of the due process clause will dictate whether jurisdiction over Defendant BCM is proper.

**2. Step Two: Due Process**

Due process requires that a defendant have "minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (quotation omitted). The requisite minimum contacts require that a defendant purposefully avail itself of the privilege of conducting activities within the forum state thereby invoking the benefits and protections of its laws. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed.2d 528 (1985). "Purposeful availment" means that a defendant's connection with the forum state must be deliberate and substantial, involving significant activities or continuing obligations. The connection cannot be random, fortuitous, attenuated, or the result of another party's unilateral activities. Id. A defendant's connection with the forum state must be such that "he should

reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed.2d 490 (1980).

After the Court has determined that a defendant has purposefully established minimum contacts with the forum state, the contacts are analyzed in light of other factors to determine whether the exercise of personal jurisdiction over a defendant comports with "fair play and substantial justice." Burger King, 471 U.S. at 476, 105 S. Ct. at 2174. In determining the sufficiency of a defendant's contacts, the court considers the following factors:

> (1) the nature and quality of contacts with the forum state;
> (2) the quantity of such contacts;
> (3) the relation of the cause of action to the contacts;
> (4) the interest of the forum state in providing a forum for its residents; and
> (5) the convenience of the parties.

Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996). In reviewing these factors, the central inquiry is the "'relationship among the defendant, the forum, and the litigation.'" Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2580, 53 L. Ed.2d 683 (1977)). The first three factors are of primary importance and may be considered together because they are closely related. Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd., 89 F.3d 519, 523 (8th Cir. 1996). The last two factors are of secondary importance and are not determinative. Id.

**a. Primary Factors**

In assessing Defendant BCM's contacts with Minnesota, the Court focuses its analysis on the primary contact factors, specifically the nature and quality of the contacts and the relation of the contacts to the cause of action. The Court notes that Plaintiffs do not claim that Defendant BCM maintains a telephone number, address, or bank account in the Minnesota. Rather, Plaintiffs assert that Defendant BCM has established the following minimum contacts with Minnesota:

> (1) the flooring retailer, Hogslat Inc., used brochures featuring BCM products in the sales presentation;
> (2) a representative of the distributor, Double L, visited Plaintiffs' farm in 1994 and discussed the quality of BCM products;
> (3) Double L President, Norb Borcherding, stated in a letter to Holden Farms dated April 1994 that he was a representative of BCM;
> (4) BCM directly shipped its products to Minnesota consumers;
> (5) BCM advertised in Pig International Magazine; and
> (6) BCM provided warranties with the flooring.

(Pls.' Mem. in Opp'n to Def. BCM's Mot. to Dismiss, Doc. No. 10., at pp. 3-4, 7-8, and 16-17; see also Pls.' Supplemental Mem. in Opp'n to Def. BCM's Mot. to Dismiss, Doc. No. 34, at p.5- 6.)

Perhaps the most compelling contacts involve Plaintiff's claim that Defendant BCM placed its product into the stream of commerce with the knowledge that its products would penetrate the Minnesota market. (Pls.' Supplemental Mem. in Opp. to Def. BCM's Mot. to Dismiss, Doc. No. 34, at pp.

9-12.) In World-Wide Volkswagen, the Supreme Court determined that the purposeful availment threshold may be met when a manufacturer places a product into the "stream of commerce" with the expectation that the product will be purchased by consumers in the forum state." See World Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 559.

In Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 92 (1987), the Supreme Court revisited the stream of commerce theory. Justice O'Connor, writing for a four member plurality, restated the purposeful availment test as requiring additional activity by the defendant that is purposefully directed at the forum state. Asahi, 480 U.S. at 112, 107 S. Ct. at 1032. Examples of these additional activities include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id. Justice Brennan, writing for four other justices, rejected the additional activity requirement for the stream of commerce analysis. Id. at 116-117, 107 S. Ct. at 1034-35. Justice Brennan reaffirmed the traditional stream of commerce theory, writing that a defendant's knowledge that their product would enter the forum state was sufficient to meet the purposeful availment requirement. Id.

The Supreme Court's disagreement concerning the stream of

commerce theory was not resolved in Asahi because the Court found jurisdiction lacking based on other grounds.[2] Id. at 114, 107 S. Ct. at 1033. However, in Barone v. Rich Bros. Interstate Display Fireworks Co., the Eighth Circuit examined the Asahi split and concluded that Asahi did not alter the stream of commerce analysis enunciated in World-Wide Volkswagen. Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 614 (8th Cir. 1994). Barone reiterated that "when a manufacturer or distributor attempts to serve a market 'directly or indirectly . . . , it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.'" Id. quoting, World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567.

Plaintiffs assert that Defendant BCM placed its product into the stream of commerce with the knowledge that the product was entering the Minnesota market. Defendant BCM's alleged knowledge stems from its participation in the shipment of its products. According to BCM invoices, Defendant BCM repeatedly shipped products directly to Minnesota consumers, and repeatedly sold and shipped replacement flooring to Minnesota consumers who were having problems with "expansion joint" problems. (Pls.'

---

[2] The Supreme Court concluded that the California court lacked personal jurisdiction because (1)neither the plaintiff nor the forum state had a significant interest in the outcome, and (2) the lawsuit would place a substantial burden on the foreign defendant. Asahi, 480 U.S. at 114, 107 S. Ct. at 1033.

Supplemental Mem. in Opp'n to Def. BCM's Mot. to Dismiss, Doc. No. 34, at pp. 3-4, and 7.) Defendant BCM would receive an order from its distributer, Double L, and then make the arrangements to ship the products to Minnesota purchasers. (Id. at pp. 2-3.) BCM was responsible for shipping the product through a common carrier and paying the shipping fee. (Id. at p. 3.) The BCM invoices indicate that BCM had the names and addresses of the purchasers and in some cases had a contact phone number and map to the shipping location. (Id. at pp. 3, 9.) The following table lists twelve direct shipments of flooring products from Defendant BCM to customers in Minnesota, in addition to its shipment to Plaintiffs:

| Date | Pieces of Flooring | Location |
|---|---|---|
| 08/25/94 | 5,700 | Clarkfield, MN |
| 07/20/94 | 9,250 | Sleepy Eye, MN |
| 11/18/94 | 11,260 | Clarkfield, MN |
| 06/23/95 | 11,960 | Olivia, MN |
| 07/26/95 | 6,050 | Trimont, MN |
| 02/09/96 | 5,000 | Willmar,MN |
| 07/03/96 | 2,420 | Dovary, MN |
| 07/19/96 | 3,630 | Pipestone, MN |
| 09/30/96 | 2,496 | Dodge Center, MN |
| 10/25/96 | 1,210 | LeSeuer, MN |
| 10/25/96 | 2,420 | Waseca, MN |
| 04/17/97 | 6,992 | Albert Lea, MN |

(Id., at pp.4-5.)

The quality and quantity of Defendant BCM's contacts with Minnesota is extensive. Defendant BCM cannot claim that it had no idea that its products were entering Minnesota. See Falkirk Mining Company v. Japan

Steel Works, Ltd., 906 F.2d 369, 374-77 (8th Cir. 1990) (declining to find personal jurisdiction over a Japanese manufacturer that did not know that six of its products would ultimately be installed in machinery located in North Dakota). Defendant BCM knew that it was shipping over $330,000 worth of flooring to Plaintiffs, a business located in the state of Minnesota, because Defendant BCM itself was responsible for the shipping. (Pls.' Supplemental Mem. in Opp'n to Def. BCM's Mot. to Dismiss, Doc. No. 34, at pp. 2-3.)

Further, Defendant BCM's subsequent shipping records indicate that its shipping of products to Minnesota consumers was not an isolated occurrence. See World-Wide Volkswagen, 444 U.S. at 297, 100 S. Ct. at 567 (stating that, in some cases, when a defendant's connection with a forum state is not an isolated occurrence that it is not unreasonable to subject the defendant to suit in the forum state); see also Vandelune v. 4B Elevator Components Unlimited, 148 F.3d 943, 948 (8th Cir. 1998) (citing the quantity of the product sold in the forum state as a factor in determining that the defendant's contacts were not attenuated, random or fortuitous). Although it is not clear what percentage of total BCM production was shipped to Minnesota, the record indicates that BCM shipped thousands of pieces of flooring worth hundreds of thousands of dollars to Minnesota consumers. (Pls.' Supplemental Mem. in Opp'n to Def. BCM's Mot. to Dismiss, Doc. No. 34, at pp. 4, 8.)

Additionally, Defendant BCM's contacts are directly related to

Plaintiffs' action. Plaintiffs assert that Defendant BCM manufactured defective products, the same products that Defendant BCM knowingly shipped into Minnesota. Compare Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 418, 104 S. Ct. 1868, 1874, 80 L. Ed. 204 (1984)(court declined to assert personal jurisdiction over a nonresident defendant when the defendant's contacts with Texas, which included one business trip to Texas, acceptance of checks drawn on a Texas bank, and the purchase of helicopters and equipment from a Texas manufacturer, did not sufficiently relate to the cause of action, a wrongful death claim arising out of a helicopter crash in Peru).

Defendant BCM asserts that this Court cannot assert personal jurisdiction over BCM based on the stream of commerce theory and relies heavily on Guinness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607 (8th Cir. 1998). (BCM's Mem. in Supp. of Mot. to Dismiss, Doc. No. 8, at pp.7-8.) Guinness involved a dispute over a beer distributorship agreement with a foreign manufacturer in which the District Court noted that "[c]ourts typically do not extend the stream of commerce theory beyond the products liability context or beyond a dispute pertaining to the actual product." Guinness Import Co. v. Mark VII Distributors, Inc., 971 F. Supp. 401, 409 (D. Minn. 1997). Unlike Guinness, this case involves a claim that BCM's product was defective. Plaintiffs claim that "the buckling was in fact caused by the use of non-galvanized, inferior quality steel as support beams." (Pls.' Mem. in Opp. to

Def. BCM's Mot. to Dismiss, Doc. No. 10, at p.5.) Furthermore, Guinness involved a foreign manufacturer that sold its product to an importer, but exercised no control over the product, the importer, or the distributor after the product left the country of origin; presumably the manufacturer had no knowledge of what markets the distributor was targeting. Guinness, 153 F.3d at 615. As discussed above, Defendant BCM had direct knowledge that its products were being sold in Minnesota because it coordinated the shipment of products to Minnesota.

Defendant BCM has purposefully availed itself of the privileges of conducting business in Minnesota. The Court finds that Defendant BCM's contacts with Minnesota are extensive and that the analysis of the primary contact factors favors the Court exercising jurisdiction over BCM.

**b. Secondary Factors**

In assessing whether the Court will exercise personal jurisdiction over Defendant BCM, the Court also considers the secondary fairness factors. These factors include the interest of the forum state in providing a forum for its residents and the convenience or inconvenience to the parties.

Plaintiffs' suit is based on a claim that defective flooring was installed in ten Minnesota hog nurseries, all of which are located in Minnesota and owned by Minnesota residents. "Minnesota has an obvious interest in providing a local forum in which its residents may litigate claims against

non-residents." Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A., 51 F.3d 1383, 1389 (8th 1995). Further, Minnesota is the most convenient location for this suit. Minnesota provides a centralized location for the parties; Defendant BCM is located in Calgary, Canada and the other Defendants, Hog Slat and Double L are located in North Carolina and Iowa.

The Court finds that the secondary fairness factors also favor the Court exercising personal jurisdiction over Defendant BCM.

## C. INSUFFICIENCY OF SERVICE OF PROCESS

Defendant BCM also seeks to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(5) for insufficiency of service of process. In Defendant's Memorandum in Support of its Motion to Dismiss, Defendant BCM asserts that service was defective for two reasons. First, Defendant argues that *any* service is improper because the Court does not have personal jurisdiction over the Defendant under the Minnesota long arm statute. In the alternative, Defendant BCM argues that, even if the Court does have personal jurisdiction over the Defendant, service was still defective because BCM was not personally served in violation of the Minnesota long arm statute. (Def.'s Mem. in Supp. of Mot. to Dismiss, Doc. No. 8, at pp. 9-10.)

Defendant BCM's arguments are not persuasive. As discussed above, the Court finds that it does have personal jurisdiction over Defendant

BCM; therefore, service should properly proceed under the Minnesota long arm statute. It appears that appropriate service of process has occurred. According to Defendant BCM's reply brief, "BCM was personally served through an international process server on April 12, 2000." (Def.'s Reply Br., Doc. No. 16, at p. 9.) The service of process in this case was not defective.

Based upon the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED that:**

(1) Defendant BCM's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 7) be **DENIED**;

(2) Defendant BCM's Motion to Dismiss for Insufficiency of Service of Process (Doc. No. 7) be **DENIED**.

Dated: November 14, 2000.

Susan Richard Nelson
SUSAN RICHARD NELSON
United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 30, 2000, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.