**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**HOLDEN FARMS, INC.,**
**a Minnesota corporation;**
**ROD GARNESS; EUGENE**
**C. WARD; RANDY SWANSON;**
**RICK ANDERSON,**
**d/b/a CIRCLE A. FARMS; TIM SANBORN;**
**AJ FARMS, a Minnesota General Partnership;**
**DENNIS KOFSTAD; MARLIN KRUCKEBERG;**
**and PORK AVENUE, L.L.P.,**
**a Minnesota Limited Liability Partnership,**

**CIVIL NO. 00-CV-785 (DSD/SRN)**

**Plaintiffs,**

**v.**

**REPORT AND RECOMMENDATION**

**HOG SLAT INC., a North Carolina**
**Corporation; BCM MANUFACTURING, LTD.,**
**a Canadian Corporation; and**
**DOUBLE L GROUP LTD., an Iowa Corporation,**

**Defendants.**

---

Dustan J. Cross, Esq., on behalf of the Plaintiffs.

Robert G. Hensley, Esq., and Paul R. Dieseth, Esq., on behalf of Defendant Hog Slat, Inc.

Gordon H. Hansmeir, Esq., on behalf of Defendant BCM Manufacturing, Ltd.

Randall E. Gottschalk, Esq., on behalf of Defendant Double L Group Ltd.

---

FILED NOV 15 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-entitled matter came before the undersigned United States Magistrate Judge on August 31, 2000, on a motion by Defendant Hog Slat, Inc. ("Hog Slat"), pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all counts asserted against it in Plaintiffs' Complaint. This motion has been referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 72.1. (Doc. No. 28.)

For the reasons set forth below, this Court recommends that Hog Slat's Motion to Dismiss be granted in its entirety as to Plaintiffs' claims for breach of contract and breach of warranty, and granted as to Plaintiffs' claims for negligent design and negligent misrepresentation, as these claims apply to the construction of the hog barns but not as they apply to the loss of the hogs.

## A. BACKGROUND

Plaintiffs, who are in the business of producing and marketing hogs, entered into ten contracts for the construction of hog nursery buildings with Defendant Hog Slat, a North Carolina corporation engaged in the business of selling and constructing hog confinement facilities. (Compl., Doc. No. 1, at ¶¶ 1-40.) The contracts were executed between April 29, 1994, and September 5, 1997, and are attached to the Complaint as Exhibits C-L.

Each of the contracts provided for the use of Filter-Eeze Maxima plastic flooring in the nurseries. Filter-Eeze Maxima flooring is manufactured

by Defendant BCM Manufacturing, Ltd., a Canadian corporation, and distributed exclusively in the United States by Defendant Double L Group, an Iowa corporation. Hog Slat installed the flooring in the nurseries pursuant to specifications supplied by BCM and Double L Group. (Id., Ex. A.)

Prior to the execution of the contracts, Double L Group provided a letter to Plaintiffs relating to the Filter-Eeze Maxima flooring (Id., Ex. B) and had prepared a brochure about the flooring which they submitted to Plaintiffs under Hog Slat's name (Id., Ex. A). This brochure referred to a "10 year non-prorated warranty." (Id., Ex. A.) The parties agree that no such warranty was included in the written contracts at issue and, in fact, the contracts expressly stated that all warranties extended under the contracts were "only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less." (Id., Ex. C-L, Art. IV(G).)

Installation of the first three nurseries was completed by Hog Slat in October 1994, and the other seven nurseries were completed per the underlying contracts. In the summer of 1998, Plaintiffs began to notice that the flooring was buckling in the first three nurseries installed in 1994. (Id., at ¶41.) Plaintiffs allege that the buckling gradually increased, leading to gaps and irregularities in the flooring, causing the nursery hogs to catch their feet in the gaps and to use their snouts to lift up the exposed slats caused by the buckling. (Id.) In several instances, it is alleged that the hogs were able to

remove a slat entirely, causing several hogs to fall into the manure basin underneath and die. (Id.)

Plaintiffs allege that the buckling was caused by the use of non-galvanized, inferior quality steel as support beams for the Filter-Eeze slats, which beams rusted and, thereby, expanded, causing the slats to buckle. (Id., at ¶43.) Plaintiffs also claim that the other seven nurseries will require replacement flooring sometime in the future. (Id., at ¶47.)

Plaintiffs allege that the hog nurseries Hog Slat constructed were defective, asserting claims for breach of contract, breach of express warranty, negligent design and negligent misrepresentation. In its Rule 12(b)(6) Motion to Dismiss, Defendant Hog Slat argues that Plaintiffs' breach of contract and breach of express warranty claims must be dismissed because they are barred by the statute of limitations,[1] the express terms of the integrated written contracts, and the parol evidence rule. Hog Slat further argues that Plaintiffs' tort claims of negligent design and negligent misrepresentation are barred by the economic loss doctrine and must be dismissed.[2]

---

[1] The Court need not reach the statute of limitations issue due to the disposition of Hog Slat's Motion to Dismiss on other grounds.

[2] The counts against Defendant Hog Slat are Counts 1, 2, 5, 7, 10, 11, 14, 16, 19, 20, 23, 25, 28, 29, 32, 34, 41, 43, 50, 52, 59, 61, 68, 70, 77, 79, 86, and 88. (Compl., Doc. No. 1.)

## B. DISCUSSION

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. In considering a motion to dismiss, a court must take all facts alleged in the complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint in the light most favorable to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The Court will dismiss a complaint only when it appears a plaintiff cannot prove any set of facts that support the claim. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L.Ed. 80 (1957); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (citations omitted). In other words, a motion to dismiss should be granted "as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey, 44 F.3d at 671 (quotation omitted).

### 1. Choice of Law

As an initial matter, Defendant Hog Slat submits that, under the conflict of laws analysis mandated by federal and state law and the terms of the underlying contracts, this Court must apply North Carolina and Iowa substantive law in testing the legal sufficiency of the Complaint. (Compl., Doc.

No. 1, Ex. C-L, Art. X(E).) Hog Slat points out that this Court's jurisdiction is premised on diversity of citizenship and, in diversity cases, federal courts follow the conflicts of law rules prevailing in the states in which they sit. See Klaxon Co. v. Stentor Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22, 85 L.Ed. 1477 (1941); Aluminum Co. of America v. Hully, 200 F.2d 257, 261 (8th Cir. 1952). As such, Hog Slat submits that this Court must apply Minnesota's conflict of laws rules which provide that, if parties agree that the law of another state governs their agreement, courts should abide by that choice and apply the law of the state which the parties select. See Milliken and Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n.1 (Minn. 1980). Hog Slat points out that such contractual "choice of law" provisions are also valid and enforceable under North Carolina and Iowa law. See Perkins v. CCH Computax, Inc., 423 S.E.2d 780, 784 (N.C. 1992); Johnston County v. R.N. Rouse & Co., 414 S.E.2d 30, 33 (N.C. 1992); Aluminum Co. of America , 200 F.2d at 261 ("The rule obtains in Iowa that the parties may agree in their contract as to that state whose law shall govern its validity, construction, interpretation and effect."); see also North Carolina Commercial Code, N.C. Stat. § 25-1-105; Iowa Commercial Code, Iowa Code § 554.1105.

In this case, five of the ten contracts at issue contain choice of law clauses which provide that "the parties agree to be bound, by North Carolina law." (Compl., Doc. No. 1, Ex. C-G, Art. X(E).) The other five contracts contain

choice of law clauses which provide that "the parties agree to be bound, by Iowa law." (Id., Ex. H-L, Art. X(E).) Thus, Hog Slat submits, North Carolina and Iowa substantive law govern the underlying contracts at issue in this lawsuit.

Plaintiffs urge the application of Minnesota law relative to the statute of limitations issues, asserting that statutes of limitations are procedural and not substantive and are governed, therefore, by the law of the forum state regardless of the underlying substantive law governing the causes of action. Because the Court finds that Plaintiffs' claims fail, as a matter of law, without reaching the issue of the applicable statute of limitations, the Court need not consider the choice of law applicable to the statute of limitations defense. Accordingly, with respect to the contract claims, the Court finds that North Carolina and Iowa substantive law govern those issues in this lawsuit -- including application of the parol evidence rule -- and will thus analyze each contract under the state law applicable to that contract's choice of law clause.

With respect to the tort claims, Defendant Hog Slat asserts that North Carolina and Iowa law, not Minnesota law as advocated by the Plaintiffs, should determine whether Plaintiffs' tort claims are barred by the economic loss doctrine. Hog Slat argues that the Eighth Circuit Court of Appeals has held that, under Minnesota choice of law principles, when non-contract claims

are "closely related to the interpretation of the contracts, they fall within the ambit of the express agreement containing a choice of law provision." Northwest Airlines v. Astraea Aviation Servs., 111 F.3d 1386, 1392 (8th Cir. 1997). Indeed, Hog Slat notes, in Northwest Airlines an argument was made that "the contractual choice of law provisions do not govern the negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment claims because they are not contract claims." Id. The Eighth Circuit disagreed with this argument, finding that the tort claims in the lawsuit were governed by the choice of law provisions, stating that:

> Although mainly styled as torts, these claims stem from Northwest's alleged failure promptly to provide functioning parts and adequate support for the refurbishment project, as required under the contracts.

Id.

Hog Slat avers that here, as in Northwest Airlines, all of Plaintiffs' negligent design and negligent misrepresentation claims arise out of their contention that Hog Slat breached the contracts. Therefore, argues Hog Slat, Plaintiffs' tort claims should be governed by the choice of law provisions contained in the contracts, and the issue of whether the economic loss rule precludes those claims should accordingly be governed by North Carolina and Iowa law.

Plaintiffs assert that under the doctrine of depacage, their tort

claims are not automatically governed by the choice of law provisions contained in the contracts. Plaintiffs aver that this Court must determine the applicable substantive law by applying Minnesota's choice of law analysis separately for Plaintiffs' tort claims using a five-part test adopted by the Minnesota Supreme Court in Milkovich v. Saari, 295 Minn. 155, 201 N.W.2d 408 (1973).

The Court agrees with Defendant Hog Slat's position and finds the Eighth Circuit Court of Appeals' holding in Northwest Airlines to be applicable to the circumstances presented in this case. The Court finds that Plaintiffs' claims of negligent misrepresentation and negligent design are so closely related to the interpretation of the contracts that the tort claims fall "within the ambit of the express agreement containing a choice of law provision." Northwest Airlines, 111 F.3d at 1392. Hence, the Court will apply North Carolina law to the tort claims arising out of the alleged breach of the five contracts containing North Carolina choice of law provisions (Compl., Doc. No. 1, Ex. C-G, Art. X(e)), and will apply Iowa law to the tort claims arising out of the alleged breach of the five contracts containing Iowa choice of law provisions (Compl., Doc. No. 1, Ex. H-L, Art. X(e)).

**2. Plaintiffs' Contract Claims: Breach of Contract and Breach of Express Warranty**

Defendant Hog Slat moves to dismiss all of the breach of contract

and express warranty claims[3] on the ground that these claims fail to state a claim upon which relief can be granted. Hog Slat argues that, under North Carolina and Iowa law, these claims must be dismissed because they are barred by the express terms of the integrated written contracts and the parol evidence rule. First, Hog Slat notes that the contracts constitute the final expression of the parties' agreement based on the following provision:

> The Contract as constituted represents the entire integrated agreement between the parties hereto and supersedes any prior negotiations, representation or agreements, either oral or written.

(Compl., Doc. No. 1, Ex. C-L, Art. I.) Second, Hog Slat notes that the contracts expressly limit Hog Slat's warranty obligations to one year under Article IV(G) of the underlying contracts which reads:

> **Article IV: Contractor's [Hog Slat's] Additional Obligations:**
>
> In addition to the other duties or obligations imposed on Contractor by this Contract, the Contractor undertakes the following:
>
> . . .
>
> G. Warranty: Contractor warrants to Owner that materials and equipment furnished under this Contract will be new and of good quality, unless otherwise required or permitted under the Contract Documents and in accordance with the manufacturer's warranties, and that **the Work will be free from defects** not inherent in the quality required or permitted and will conform to the Contract

3 These claims are set forth in Counts 1, 2, 10, 11, 19, 20, 28, 29, 37, 38, 46, 47, 55, 56, 64, 65, 73, 74 82 and 83 of the Complaint.

> Documents. Provided, however, that any warranty is subject to such reasonable tolerances and variances as are usual and customary in the trade and subject to such Article VIII below, **the aforesaid warranties are only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less.**
>
> **There are no other warranties of any kind expressed or implied, oral or written. Contractor disclaims any other warranties.** CUSTOMER INITIAL __//__

(Compl., Doc. No. 1, Ex. C-L, Art. IV(G), emphasis added.)[4]

---

[4] Work is defined in Article II of the Contracts as follows:

> In accordance with, and subject to the terms and conditions of this Contract, Contractor shall furnish the materials and equipment and perform the labor, necessary for the construction of the buildings identified below including all concrete work and foundation construction and further shall install the fixtures and hog equipment designated in Exhibit A in said buildings, (the foregoing construction and installation being hereinafter referred to as the "Work") on the property of Owner . . .
>
> . . .
>
> **Contractor agrees to complete the Work in accordance with the Contract Documents, provided however, that reasonable tolerances or variances as are customary in the trade shall be allowed and strict compliance with the Contract Documents including, but not limited to, the drawings, plans and specifications in not required. CUSTOMER INITIAL __//__**
>
> . . .
>
> The Contractor will execute the entire Work described in the Contract Documents except to the extent specifically stated in the any of the Contract Documents to be the responsibility of the Owner or others and specifically, without limitation, excepting

Article VIII of the Contracts addresses and defines "Acceptance of Work." Most significantly, this Article states that, "In all events, however, Owner's placement of hogs in any building shall constitute acceptance of that building 'as is' with all and any defects in materials or workmanship. This acceptance excludes items on the punch list and items covered under warranty. CUSTOMER INITIAL __/ /__" (Compl., Doc. No. 1, Ex. C-L, Art. VIII.) Hog Slat notes that Plaintiffs initialed this paragraph of the Contracts in each instance. (Compl., Doc. No. 1, Exs. C-L, Art. II, IV and VIII.)

And finally, as to Plaintiffs' claims that they received a ten year warranty for the flooring in a brochure and a letter given to Holden Farms before the contracts were signed (Compl., Doc. No. 1, ¶¶ 17, 19, 20, 22; Exs. A-B), Hog Slat argues that because the alleged express ten year warranty is based upon an agreement made prior to the execution of the integrated written contracts, and because that prior agreement is expressly contradicted by the terms of those contracts, the express warranty causes of action are barred by the parol evidence rule. Indeed, during oral argument on this motion, Plaintiffs conceded that the parol evidence rule precludes consideration of the ten year warranty contained in the brochure and letter because the flooring was

---

> the items identified in Article III [Owners Additional Duties].

(Compl., Doc. No. 1, Ex. C-L, Art. II.)

encompassed by the one-year warranty provision set forth in Article IV(G) of the contracts. (Tr. of the Aug. 30, 2000, oral argument on Hog Slat's Mot. to Dismiss, Doc. No. 38, at p. 36.)

The parol evidence rule reads as follows:

> terms with respect to which the confirmatory memoranda of the parties agreed or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement . . .

N.C. Stat. § 25-2-202; Iowa Stat. § 554.2202. See Phelps v. Spivey, 486 S.E.2d 226, 229 (N.C. App. 1997) ("The parol evidence rule is a rule of substantive law, though it is often expressed as if it were a rule of evidence. The rule 'prohibits proof of certain facts, events, agreements or negotiations that occur prior to or contemporaneously with the execution of a writing intended to be the final expression of the parties' agreement.'"); Ralph's Distrib. Co. v. AMF, Inc., 667 F.2d 670, 673 (8th Cir. 1981)("Under the Uniform Commercial Code, as adopted in Iowa, parol evidence is inadmissible to contradict the terms of a writing that is intended to be a 'final' expression' of the provisions in question."). The parol evidence rule also bars the use of any prior agreement to explain or supplement the underlying integrated contracts if the contract was intended "as a complete and exclusive statement of the terms of the agreement." N.C. Stat. § 25-2-202; Iowa Stat. § 554.2202 (barring use of

parol evidence to explain or supplement a contract if the contract was intended "as a complete and exclusive statement of the terms of the agreement").

The Court notes that Plaintiffs acknowledge that the alleged defect in the flooring of the hog nurseries did not manifest itself until the one-year warranty period had expired.[5] The Court finds as a matter of law, that because the contracts at issue are integrated contracts that constitute the "final expression" of the parties' agreement, Plaintiffs are barred by the parol evidence rule from alleging any prior agreement that contradicts the terms of these contracts which, at Article IV(G), expressly provide for a one year warranty period. As such, Plaintiffs' claims for breach of contract and breach

---

[5] In this vein, the Plaintiffs contended, for the first time at oral argument on Hog Slat's Motion to Dismiss, that Defendant Hog Slat breached the contracts the moment Hog Slat built the barns even though no defects became apparent for four years. Plaintiffs argued that Hog Slat should have known, within the one year warranty period, that the product would fail some years later. Plaintiffs argued that because there was an alleged breach, within the one year warranty period, they should now be permitted to state a cause of action for breach of that warranty as long as they asserted the cause of action within the statute of limitations period. Defendant Hog Slat strenuously objected to the Plaintiffs' newly raised theory, noting that under such a theory, the date of the actual failure of goods or services becomes irrelevant thus allowing a claim even if the products failed long after any warranty period expired. The adoption of Plaintiffs' theory would, submits Hog Slat, render meaningless all limitations in warranty coverage. The Court notes that the parties submitted unsolicited, post-hearing letter briefs on this issue which the Court declines to entertain. The Court agrees with Hog Slat's position that Plaintiffs' theory, taken to its logical conclusion, would render meaningless all warranty period limitations in a contract. It is undisputed that the product failed long after the expiration of the warranty periods in the subject contracts.

of express warranty should be dismissed.[6]

### 3. Plaintiffs' Tort Claims

Defendant Hog Slat argues that Plaintiffs' negligent design and negligent misrepresentation claims are barred by the economic loss doctrine which prohibits recovery for economic loss in tort under both North Carolina and Iowa law. Moore v. Coachman Indus. Inc., 499 S.E.2d 772, 780 (N.C. App. 1998) ; Terry's Floor Fashions, Inc. v. Georgia-Pacific Corp., No. 5:97-CV-683-BR(2), 1998 WL 1107771 at *3-4 (E.D.N.C. Jul. 23, 1998); Chicopee, Inc. v. Sims Metal Works, Inc., 391 S.E.2d 211, 217 (N.C. App. 1990); Nelson v. Todd's Ltd., 426 N.W.2d 120, 123 (Iowa 1988); Gunderson v. ADM Investor Servs., Inc., 85 F.Supp.2d 892, 922-23 (N.D. Iowa 2000)("under Iowa law, a plaintiff can recover for purely economic loss only in contract and not in tort law"); and Richards v. Midland Brick Sales Co., Inc., 551 N.W.2d 649, 650-51 (Iowa Ct. App. 1996)("It is a generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm."). Defendant Hog Slat asserts that because Plaintiffs are claiming they have

---

[6] With this threshold determination, the Court need not reach the issue of the "predominant purpose" of the Contracts -- i.e., whether the Contracts predominantly involved the sale of goods or were predominantly construction Contracts -- an analysis which might have been necessary were the Court to address the applicable statute of limitations argument raised by Plaintiffs. However, the Court need not reach that issue because all of Plaintiffs' contract claims fail, as a matter of law, by virtue of the express one year warranty provision of the Contracts and the parol evidence rule.

suffered only commercial losses properly recoverable under the contracts between the parties, the Plaintiffs' tort claims[7] must be dismissed.

Defendant Hog Slat submits that the economic loss doctrine is based upon sound public policy grounds concerning the allocation of risk:

> Contract law permits the parties to negotiate the allocation of risk. Even where the law acts to assign risk through implied warranties, it can easily be shifted by the use of disclaimers. No such freedom is available under tort law. Once assigned, the risk cannot be easily disclaimed. This lack of freedom seems harsh in the context of a commercial transaction, and thus the majority of courts have required that there be injury to a person or property before imposing tort liability.

Terry's Floor Fashions, 1998 WL 1107771, at *4 (quoting 2000 Watermark Ass'n, Inc. v. Celotex, 784 F.2d 1183, 1185-86 (4th Cir. 1986)). Defendant Hog Slat asserts that both North Carolina and Iowa law bar negligence and negligent misrepresentation actions if those actions arise from commercial transactions and result only in economic losses with no injury to persons or other property. AT&T Corp. v. Medical Review of North Carolina, Inc., 876 F. Supp. 91 (E.D.N.C. 1995); Maynard Coop. V. Zeneca, Inc., 143 F.3d 1099, 1102 (8th Cir. 1998)(economic loss doctrine barred company's negligent misrepresentation claim under Iowa law); Cunningham v. PFL Life Ins. Co., 42

---

[7] Counts 5, 7,14, 16, 23, 25, 32, 34, 41, 43, 50, 52, 59, 61, 68, 70, 77, 79, 86 and 88 of the Complaint allege negligent design; Counts 7, 16, 25, 34, 43, 52, 61, 70, 79, 88 allege negligent misrepresentation.

F.Supp.2d 872 (N.D. Iowa 1999); Moore v. Coachmen Indus., Inc., 499 S.E.2d 772 (N.C. Ct. App. 1998).

In response, Plaintiffs assert, relying on the assumption that the contracts at issue are construction contracts rather than contracts for the sale of goods governed by the U.C.C., that neither Iowa's nor North Carolina's version of the economic loss doctrine preclude Plaintiffs' tort claims for negligent misrepresentation and negligent design.

**a. North Carolina's Economic Loss Doctrine**

Defendant Hog Slat argues that, under applicable North Carolina law, the economic loss doctrine bars Plaintiffs' tort claims whether or not the underlying contracts are contracts for the sale of goods. See North Carolina Ports Auth. v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350-51 (N.C. 1978); see also Spillman v. Amer. Homes, 422 S.E.2d 740, 741-42 (N.C.App. 1992)(a tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract, even if that failure to properly perform was due to the negligent or intentional conduct of that party, when the injury resulting from the breach is damage to the subject matter of the contract); and Warfield v. Hicks, 370 S.E.2d 689, 694 (N.C.App. 1988).

The Supreme Court of North Carolina, in North Carolina Ports Authority, held that a building owner who contracted for construction of buildings according to agreed plans and specifications was not entitled to

recover on a negligence theory from a contractor who allegedly failed to construct the roofs as agreed, and held that the only basis for recovery would be breach of contract. 240 S.E.2d at 350-51. In so holding, the North Carolina Ports Authority court stated, "Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor," with four exceptions: 1) negligence resulting in injury to the person or property of someone other than the promisee; 2) negligence resulting in injury to the property of the promisee other than the property which was the subject of the contract, or was a personal injury to the promisee; 3) negligence resulting in loss of or damage to the promisee's property, which was the subject of the contract, the promisor being charged by law, as a matter of public policy, with the duty to use care in the safeguarding of the property from harm, as in the case of a common carrier, an innkeeper or other bailee; and 4) willful injury to or a conversion of the property of the promisee, which was the subject of the contract by the promisor. Id.

In Warfield v. Hicks, a case which arose from a contract for the construction of a custom home, the court found that a tort claim for negligent construction was barred by the economic loss doctrine. 370 S.E.2d at 694. In reaching this conclusion, the Warfield court stated:

> In our opinion, our Supreme Court's decision in North Carolina Ports Authority v. Lloyd A. Fry Roofing Co., 294 N.C. 73, 240 S.E.2d 345 (1978) controls the resolution of this issue. Setting forth the principle

> that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor," id. at 81, 240 S.E.2d at 350, the Court held that negligence was not a proper basis of recovery for an alleged failure of the defendant contractor to properly install a roof in accordance with its contract. Although the Court enumerated several categories of exceptions in which a promisor might be held liable in tort for damages proximately caused by a negligent or willful act or omission in the course of performance of his contract, we conclude that the case at bar falls within none of them. The Warfields have neither alleged nor proven injury other than the injury to the property itself arising from the contractor's alleged failure to adequately perform its contract or to satisfy express and implied warranties. We are convinced that, under these circumstances, as in Ports Authority, the Warfields' allegations of negligence were surplusage, and it thus was error to submit negligence to the jury as an additional basis for relief.

Id., at 694.

In support of their position, Plaintiffs cite Haywood St. Redevelopment Corp., Inc. v. Harry S. Peterson Co., 463 S.E.2d 564 (N.C. App. 1995), suggesting that this case implies that the economic loss rule does not apply to construction contracts under North Carolina law. (Pls.' Mem. in Opp'n, Doc. No. 24, at p. 28). However, the defendant in Haywood never raised the economic loss doctrine and, therefore, the Haywood court did not address that issue. See Haywood, 463 S.E.2d 564. In addition, because the court in Haywood found that the negligence claims were barred by the statute of limitations, it never had to reach the issue of whether the claims were also barred by the economic loss doctrine. Id. at 566.

The Court notes that in Moore v. Coachmen Industries, Inc., the North Carolina Court of Appeals affirmed a trial court's grant of summary judgment based in part on the application of economic loss doctrine. 499 S.E.2d at 780. In so doing, the North Carolina Court of Appeals succinctly set forth the rationale behind this doctrine. Id. The court reasoned that:

> The rationale for the economic loss rule is that the sale of goods is accomplished by contract and the parties are free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective. To give a party a remedy in tort, where the defect in the product damages the actual product, would permit the party to ignore and avoid the rights and remedies granted or imposed by the parties' contract. See Reece [v. Homette Corp.], 110 N.C.App. [462,] 466-67, 429 S.E.2d. [768,] 770 [(1993)]. Where a defective product causes damage to property other than the product itself, losses attributable to the defective product are recoverable in tort rather than contract. Id. at 467, 429 S.E.2d at 770.

499 S.E.2d at 780.

Accordingly, Defendant Hog Slat urges the Court to find that Plaintiffs' tort claims relative to the five contracts with North Carolina choice of law provisions (Compl., Doc. No. 1, Exs. C-G, Art. X(e)) are barred by the economic loss doctrine whether or not the underlying contracts were contracts for the sale of goods.

As applied to the tort claims arising out of the five contracts governed by North Carolina law, the Court finds that, under prevailing North

Carolina law, Plaintiffs' tort claims as to the products that were the subject of the contracts -- i.e., the hog nurseries (Compl., Doc. No. 1, at Counts 5, 7, 14, 16, 23, 25, 32, 34, 41, 43, 50, 52, 59, 61, 68, 70, 77, 79, 86 and 88)-- are barred by the economic loss doctrine. This is so because the parties to those contracts were "free to include, or exclude, provisions as to the parties' respective rights and remedies, should the product prove to be defective," and Plaintiffs cannot be allowed to ignore the remedies to which they agreed in their contracts. Moore, 499 S.E.2d at 780.

The Court notes, however, that Defendant Hog Slat does not squarely address the issue of whether the loss of the hogs, as opposed to the damage to the hog nurseries, fits within the "damage to other property" exception to the application of the economic loss doctrinc sct forth in North Carolina Ports Authority, 240 S.E.2d at 350-51. The Court finds that the hogs themselves are "other property" of the promisee and not the subject of the Contracts. As such, this Court will not recommend that the tort claims relative solely to the loss of the hogs be dismissed, and instead recommends that Plaintiffs' tort claims relative to any lost hogs be permitted to proceed, and Defendant Hog Slat's Motion to Dismiss be denied in this limited respect.

**b. Iowa's Economic Loss Doctrine**

Defendant Hog Slat argues that, under applicable Iowa law, the economic loss doctrine bars Plaintiffs' tort claims of negligent design and negligent misrepresentation whether or not the underlying contracts are contracts for the sale of goods. See Nelson v. Todd's Ltd., 426 N.W.2d. 120, 123 (Iowa 1988); Gunderson v. ADM Investor Servs., Inc., 85 F.Supp.2d 892, 922-23 (N.D.Iowa 2000)("under Iowa law, a plaintiff can recover for purely economic loss only in contract and not in tort law"); Richards v. Midland Brick Sales Co., Inc., 551 N.W.2d 649, 650-51 (Iowa Ct. App. 1996)("It is a generally recognized principle of law that plaintiffs cannot recover in tort when they have suffered only economic harm."). Hog Slat submits that Iowa law bars negligence and negligent misrepresentation actions if those actions arise from commercial transactions and result only in economic losses with no injury to persons or other property. Maynard Coop. v. Zeneca, Inc., 143 F.3d 1099, 1102 (8th Cir. 1998)(economic loss doctrine barred company's negligent misrepresentation claim under Iowa law); Cunningham v. PFL Life Ins. Co., 42 F.Supp.2d 872 (N.D. Iowa 1999).

In Cunningham, addressing the plaintiffs' argument that the economic loss doctrine did not bar its tort claims because those tort claims were "based upon conduct that is separate and distinct from conduct constituting a breach of contract," the United States District Court for the

Northern District of Iowa, (Melloy, C.J.), wrote:

> The economic loss doctrine prohibits tort recovery for purely economic losses, consigning such claims to contract law. American Fire and Casualty Co. v. Ford Motor Co., 588 N.W.2d 437, 439 (Iowa 1999)(strict liability); Nelson v. Todd's Ltd., 426 N.W.2d 120, 122 (Iowa 1988)(strict liability and negligence); Richards v. Midland Brick Sales Co., 551 N.W.2d 649, 651-52 (Iowa App. 1996)(strict liability and negligence). It is well-established that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable. Todd's Ltd., 426 N.W.2d at 123.

Cunningham, 42 F. Supp. 2d at 886-87.

Under Iowa law, the Court finds that Plaintiffs' tort claims of negligent design and negligent misrepresentation relative to the allegedly defective hog nurseries are barred by the economic loss doctrine. See id. Defendant Hog Slat's motion to dismiss Plaintiffs' tort claims of negligent misrepresentation and negligent design should be granted in this respect. However, the Court finds Plaintiffs' claims are not barred as they apply to the loss of the hogs.

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1) The motion by Defendant Hog Slat, Inc., pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all counts asserted against it in Plaintiffs' Complaint (Doc. No. 22) be **GRANTED IN ITS ENTIRETY AS TO PLAINTIFFS' CLAIMS**

**FOR BREACH OF CONTRACT AND BREACH OF WARRANTY (Counts 1, 2, 10, 11, 19, 20, 28, 29, 37, 38, 46, 47, 55, 56, 64, 65, 73, 74, 82 and 83 of the Complaint)**; and

2) The motion by Defendant Hog Slat, Inc., pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss all counts asserted against it in Plaintiffs' Complaint (Doc. No. 22) be **GRANTED AS TO PLAINTIFFS' CLAIMS FOR NEGLIGENT DESIGN AND NEGLIGENT MISREPRESENTATION (Counts 5, 7, 14, 16, 23, 25, 32, 34, 41, 43, 50, 52, 59, 61, 68, 70, 77, 79, 86 and 88 of the Complaint), EXCEPT AS THESE CLAIMS APPLY TO THE LOSS OF THE HOGS**.

Dated: November 14, 2000.

SUSAN RICHARD NELSON
United States Magistrate Judge

Under Fed. R. Civ. P. 72 and D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by November 30, 2000, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.