UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-785(DSD/SRN)

Holden Farms, Inc. a Minnesota corporation; Rod Garness; Eugene C. Ward; Randy Swanson; Rick Anderson d/b/a Circle A Farms; Tim Sanborn; AJ Farms, a Minnesota general partnership; Dennis Kofstad; Marline Kruckeberg; and Pork Avenue, LLP, a Minnesota limited liability partnership,

Plaintiffs,

v. **ORDER**

Hog Slat, Inc., a North Carolina corporation; BCM Manufacturing, Ltd., a Canadian corporation; and Double L Group Ltd., an Iowa corporation,

Defendants.

Gary W. Koch, Esq., Dustan J. Cross, Esq. and Gislason & Hunter, 2700 Broadway South, P.O. Box 458, New Ulm, MN 56073, counsel for plaintiffs.

Paul R. Dieseth, Esq., Robert G. Hensley, Esq., Theresa M. Bevilacqua, Esq. and Dorsey & Whitney, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402; Roberto Anguizola, Esq., and Anguizola, Dornbos & Shulman, 1005 Franklin Avenue West, Suite 3, Minneapolis, MN 55405, counsel for defendant Hog Slat, Inc.

Richard W. Sobalvarro, Esq., Patrick J. Larkin, Esq., Rajkowski Hansmeier, Esq., 11 7th Avenue North, P.O. Box 1433, St. Cloud, MN 56302, counsel for defendant BCM Manufacturing.

Joseph F. Lulic, Esq., Randall E. Gottschalk, Esq. and Hanson, Lulic & Krall, 500 Minneapolis Center, 920 Second Avenue South, Minneapolis, MN 55402; Brad J. Brady, Esq. and Brady & O'Shea, 2735 First Avenue S.E., Suite 205, Cedar Rapids, IA 52402, counsel for defendant Double L Group.

FILED 4-26-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 4-26-02
Deputy Clerk's Initials ____

This matter is before the court on the motions of defendants Hog Slat, Inc. for summary judgment, BCM Manufacturing, Ltd. for partial summary judgment, and Double L Group, Ltd. for summary judgment. Based on a review of the file, record and proceedings herein, the court: (1) grants in part and denies in part defendant Hog Slat's motion for summary judgment; (2) grants defendant BCM's motion for partial summary judgment; and (3) grants defendant Double L's motion for summary judgment.

**BACKGROUND**

This case involves the sale of ten hog nursery buildings. Plaintiffs Holden Farms, Inc. ("Holden Farms") are in the business of producing and marketing hogs. Co-defendant Hog Slat, Inc. ("Hog Slat") is a North Carolina corporation engaged in the business of selling hog farming equipment and hog confinement facilities. Hog Slat entered into ten contracts with Holden Farms for the sale of hog nursery buildings.[1] Each of the contracts provided for the use of plastic flooring in the hog nurseries. The plastic flooring was manufactured by co-defendant BCM Manufacturing, Ltd. ("BCM"), a Canadian corporation, and distributed exclusively in the United States by Double L Group, Ltd. ("Double L"), an Iowa limited

[1] All ten contracts were executed between April 29, 1994 and September 5, 1997.

liability company. Hog Slat installed the flooring in the hog nurseries pursuant to specifications supplied by BCM and Double L.

Prior to the execution of the final contracts, Holden Farms agreed to host a sales presentation by representatives of Double L and Hog Slat regarding BCM's flooring.[2] In conjunction with this sales presentation, Double L prepared a letter and promotional brochure which they submitted to Holden Farms relating to the flooring. The brochure, submitted under Hog Slat's name, referred to a "ten year non-prorated warranty." The letter similarly referred to a "ten-year non-prorated warranty." No such warranty, however, was included in the final executed contracts. Instead, the final executed contracts expressly stated that all warranties extended under the contracts were "only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less." (Compl. Ex. C-L, Art. 4(g).) In addition, the contracts contained the following disclaimer: "There are no other warranties of any kind, expressed or implied, oral or written. Contractor disclaims any other warranties." (See id.)

Hog Slat completed the installation of the first three hog nurseries in 1994. The other seven hog nursery installations were

[2] This sales meeting occurred in April, 1994. In attendance, in addition to representatives of Holden Farms, were Wendell Burge, who at the time was the Sales and Construction Manager for Hog Slat's Midwest Division and Norb Borcherding, who along with his wife are the sole shareholders of Double L.

completed over the next several years. Originally, plaintiffs and Hog Slat had anticipated installing traditional metal flooring supported by painted steel beams. When plaintiffs decided to install plastic flooring instead, neither plaintiffs nor Hog Slat discussed installing a different type of support beam.[3]

In the summer of 1998, plaintiffs allegedly began to notice problems with the flooring in the first three nurseries built in 1994. Plaintiffs contend that these problems resulted from the corrosion of the steel beams that supported the flooring causing the floors to buckle. Plaintiffs further allege that the buckling created gaps in the flooring that resulted in the death of several hogs. Plaintiffs have since replaced all of the steel beams in the ten buildings and have removed some of the flooring that they claim was damaged by the corrosion of steel beams.

Plaintiffs notified Double L, Hog Slat, and BCM of their problems with the plastic flooring. Efforts were made to remedy the problem. However, these efforts were to no avail. Plaintiffs then brought the present lawsuit against Hog Slat, Double L, and BCM. Against co-defendant Hog Slat, plaintiffs asserted ten breach of contract, breach of express warranty, negligent design, and negligent misrepresentation claims. By prior order of this court,

---

[3] Defendants assert that this topic did not arise because steel beams had been widely used to support hog barn floors for years in the hog industry, and plaintiffs had previously installed and were still using steel support beams in their other hog buildings.

however, all of those claims were dismissed except for the tort claims for damages relating to the alleged death of several hogs.[4] Plaintiffs have also brought ten breach of warranty, negligent design, and negligent misrepresentation claims against BCM and ten breach of warranty and negligent misrepresentation claims against Double L.

All three defendants now move for summary judgment or partial summary judgment: Hog Slat with respect to the remaining claims of plaintiffs and the cross-claims for contribution and indemnification asserted by Hog Slat's co-defendants; BCM for the claims of breach of warranty and negligent representation and for the claim of negligent design except as this claim applies to the loss of the hogs; and Double L for all claims asserted against it by plaintiffs. For the reasons stated, the court grants in part and denies in part Hog Slat's motion for summary judgment, grants BCM's motion for summary judgment except as the claim of negligent design applies to the loss of the hogs, and grants Double L's motion for summary judgment.

[4] Plaintiffs subsequently moved to amend their complaint to allege numerous additional tort claims against Hog Slat. That motion was denied in part and granted in part, and plaintiffs were allowed to add claims based upon the North Carolina Unfair and Deceptive Trade Practices Act ("UTPA"), North Carolina Gen. Stat. § 75-1.1. (See Dist. Ct. Order, May 16, 2001.)

## DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Fed. R. Civ. P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 250. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be

granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See id. at 322-23.

**B. Defendant Hog Slat's Motion for Summary Judgment**

In light of this court's order of March 2, 2001, granting in part and denying in part Hog Slat's motion to dismiss [Doc. No. 55] and this court's order dated May 16, 2001, granting in part and denying in part plaintiffs' motion to amend [Doc. No. 71], there are only three claims still pending against Hog Slat: negligent misrepresentation, negligent design,[5] and the claim based on the North Carolina Unfair and Deceptive Trade Practices Act ("UTPA"). See N.C. Gen. Stat. § 75-1.1 (2001). Hog Slat now moves for summary judgment on all of these claims. For the following reasons, the court will grant that motion in part and deny it in part.

**1. Negligent Misrepresentation**

Plaintiffs' negligent misrepresentation claims are based upon statements contained in a letter and brochure provided to plaintiffs in April 1994. To maintain a claim of negligent misrepresentation, a plaintiff must establish, among other things, the essential elements of duty and justifiable reliance. See

[5] This court, applying the economic loss doctrines of North Carolina and Iowa, dismissed all counts as to Hog Slat on the claims for negligent misrepresentation and negligent design except as these claims apply to the loss of hogs. (Dist. Ct. Order, March 2, 2001, at 5-6.)

Freeman v. Earnest & Young, 516 N.W.2d 835, 837-838 (Iowa 1994); Hudson-Cole Dev. Corp. v. Beemer, 511 S.E.2d 309, 313 (N.C. Ct. App. 1999). Hog Slat asserts that under both North Carolina and Iowa law[6] plaintiffs cannot establish that defendant owed them a duty of care and are therefore entitled to summary judgment with respect to plaintiffs' negligent misrepresentation claims. See Celotex Corp., 477 U.S. at 324.[7] The court agrees.

Ordinarily, the class of people who are held to owe a duty for negligent misrepresentation are limited to those in the business of providing advice or information, and there is no duty between commercial parties dealing in arm's-length transactions. See Freeman, 516 N.W.2d at 837-838 ("[w]e have held that the tort of negligent misrepresentation applies only to those defendants in the profession or business of supplying information or opinions."); Sain v. Cedar Rapids Comm. Sch. Dist., 626 N.W.2d 115, 125 (Iowa 2001) (limiting the class of people who owe a duty for negligent

---

[6] This court has ruled that, in litigating plaintiffs' tort claims, the law of North Carolina applies for five of the ten contracts and Iowa law applies for the other five. (Dist. Ct. Order, March 2, 2001.) The parties agree that this ruling still applies for purposes of the present motion. (See Pls.' Mem. Opp'n Summ. J., n.1; Def.'s Mem. Supp. Sum. J. at 7.)

[7] Hog Slat also asserts the plaintiffs fail to show justifiable reliance in light of the undisputed facts. While the court finds this argument to be persuasive, it will not specifically address this issue in light of the determination that, given the arm's-length commercial nature of the parties relationship, the requisite duty cannot exist here for establishing a prima facie case of negligent misrepresentation.

misrepresentation claims to those people who are in the business of supplying information); Fry v. Mount, 554 N.W.2d 263, 266 (Iowa 1996) (stating that manufacturers and dealers of merchandise are not engaged in the business of providing information even if they also provide services in conjunction with a product); Simms v. Prudential Life Ins. Co. of Am., 537 S.E.2d 237, 241 (N.C. Ct. App. 2000) (holding that plaintiffs failed to allege a duty because they did not allege that the defendant was in the business of giving financial advice), rev. denied, 547 S.E.2d 18 (N.C. 2001); Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP, 513 S.E.2d 320, 323-324 (N.C. 1999) ("one who ... supplies false information for the *guidance* of others in their business transactions") (emphasis added).[8]

The undisputed facts clearly demonstrate that the parties here were dealing in an arm's-length transaction. Hog Slat is in the business of selling hog facility materials and supplies, not providing information or advice for the guidance of others. (See

[8] Plaintiffs unsuccessfully attempt to argue that under North Carolina law, a defendant can be held liable in a commercial transaction whether or not it is in the business of providing advice. Plaintiffs fail, however, to successfully support this proposition. Rather, this court's review of North Carolina law leads to the opposite conclusion that no duty exists for parties dealing in an arm's-length commercial transaction where defendant is *not* in the business of providing advice or information. See Simms, 537 S.E.2d at 241; Marcus Bros. Textiles, 513 N.E.2d at 323-324. Since plaintiffs cannot show that Hog Slat was in the business of providing advice or guidance, plaintiffs fail to properly allege a claim for negligent misrepresentation under North Carolina law.

Pls.' Mem. Opp'n Summ. J. at 10 ("[plaintiffs] purchased various hog facility materials from Hog Slat such as concrete slabs and equipment farrowing crates.").)[9] Plaintiffs concede that they had purchased farming materials from Hog Slat since 1989. (See id.) Thus, plaintiffs had a commercial relationship with Hog Slat that preceded the matters in litigation by nearly five years. Moreover, in their own words, when plaintiffs met with defendants regarding the plastic flooring at issue in this litigation, it was under the auspices of being a "sales presentation." (See id. at 11 ("Holden agreed to host a sales presentation by [defendants]")). The purpose of the meeting was to "make a sales presentation regarding plastic flooring," not to supply information or advice. (See id.) The court thus concludes that the undisputed facts demonstrate that this was an arm's-length transaction, and plaintiffs have not raised a material issue of fact as to whether Hog Slat was in the business of supplying information or advice. See Simms, 537 S.E.2d at 237; Sain, 626 N.W.2d at 125. Accordingly, Hog Slat owed no duty under either Iowa or North Carolina law and all of the negligent misrepresentation claims must be dismissed.

**2 Negligent Design**

After carefully reviewing the applicable law and record, the court cannot conclude that Hog Slat is entitled to summary judgment

---

[9] Plaintiffs also acknowledge that they are experienced in the hog farming industry.

with respect to plaintiffs' negligent design claims. In order to make a prima facie case of negligent design, plaintiffs must demonstrate that: (1) Hog Slat owed Holden Farms a legal duty to exercise due care; (2) Hog Slat breached that duty; (3) the breach was the actual and proximate cause of Holden Farms' injuries; and (4) Holden Farms suffered damages. See Von Vizcay v. Thoms, 538 S.E.2d 629, 630-31 (N.C. Ct. App. 2000); Walls v. Jacob N. Printing Co., Inc., 618 N.W.2d 282, 285 (Iowa 2000).

Plaintiffs argue that Hog Slat's failure to recommend or provide a different support system breached a common law duty to construct the hog confinement facilities in a workmanlike manner. That is, plaintiffs allege that, in light of the decision to install plastic flooring, Hog Slat breached its duty by failing to specify a different material to be used to support the flooring other than the steel beams that were used. After reviewing the undisputed facts and the relevant law, the court believes that a question of material fact does exist as to whether Hog Slat breached a legal duty to exercise due care by purportedly failing to provide an adequate floor support structure in light of the decision to install plastic flooring. Accordingly, summary judgment is inappropriate. See Celotex, 477 U.S. at 322.

The court also notes that, while plaintiffs' negligent design claims against Hog Slat cannot be dismissed on summary judgment as a matter of law, this court has already ruled that these claims

only apply as to the loss of the hogs pursuant to the economic loss doctrine. (See Dist. Ct. Order, March 2, 2001, at 5-6; see also Report & Recommendation of Magistrate Judge Susan Richard Nelson, Nov. 14, 2000, at 21-24 ("Plaintiff's tort claims ... are barred by the economic loss doctrine. [However] [t]he Court finds that the hogs themselves are 'other property' ... [and] plaintiff's tort claims relative to any lost hogs [are] permitted to proceed").)

**3. North Carolina UTPA**

In order to establish a claim under the North Carolina UTPA, a plaintiff must show: (1) an unfair or deceptive act or practice; (2) in or effecting commerce; and (3) which proximately caused injury. Rawls & Assocs. v. Hurst, 550 S.E.2d 219, 224 (N.C. Ct. App. 2001). Because the court concludes that the undisputed facts demonstrate that plaintiffs cannot establish the first prong, that Hog Slat engaged in an "unfair or deceptive act or practice," Hog Slat is entitled to summary judgment on the UTPA claim.

A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. See Rawls, 550 S.E.2d at 224; Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). Exactly what conduct should be considered unfair is a determination of law made by the court. See Dalton, 548 S.E.2d at 711; Rawls, 550 S.E.2d at 224; Norman v. Loomis Fargo & Co., 123 F. Supp. 2d 985, 989 (W.D.N.C. 2000). Courts generally find unfair conduct

under the North Carolina UTPA in only three situations: (1) where there is fraud; (2) where there has been an inequitable assertion of power; and (3) where there has been a breach of contract, warranty or promise *coupled* with egregious or aggravating circumstances. See Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, 80 F.3d 895, 903 (4th Cir. 1996); Gray v. North Carolina Ins. Underwriting Assn., 529 S.E.2d 676, 681 (N.C. 2000); Sara Lee Corp. v. Carter, 519 S.E.2d 308, 310-312 (N.C. 1999).

After careful review, the court believes that none of these situations exist here. First, this court has already ruled that plaintiff's fraudulent misrepresentation claims are precluded by a lack of proof. (Dist. Ct. Order, May 16, 2001, at 3-6.) Therefore, fraud cannot be the alleged basis for plaintiffs' North Carolina UTPA claim. Second, the court does not see a basis for asserting the UTPA under an allegation of an inequitable assertion of power. As has previously been discussed, the court believes that the parties here negotiated an arm's-length commercial transaction. A review of North Carolina law indicates that courts are reluctant to find violations of the UTPA when two sophisticated parties negotiate an arm's-length commercial transaction. See Pharmacy Servs. v. Beverly-Hanks & Assocs., Inc., 124 F. Supp. 2d 343, 348 (W.D.N.C. 2000); Spartan Leasing, Inc. v. Pollard, 400 S.E.2d 476, 482 (N.C. 1991). Moreover, the court sees no evidence that Hog Slat inequitably asserted any power or position over

plaintiffs. Plaintiffs were experienced in the hog producing and marketing business. Finally, the court concludes that Hog Slat cannot be held liable under the North Carolina UTPA for breach of contract or warranty combined with aggravating circumstances since this court has already held that Hog Slat did not breach any contract or warranty. (See Dist. Ct. Order, March 2, 2001, at 3 and 4.)

Accordingly, the court sees no grounds to support plaintiffs' assertion that Hog Slat engaged in an unfair or deceptive act or practice. Hog Slat is thus entitled to summary judgment on the North Carolina UTPA claims.

**4. Cross-Claims for Contribution and Indemnification**

Both co-defendants BCM and Double L have alleged cross-claims for contribution and indemnification. Hog Slat now moves for summary judgment with respect to these cross-claims. Hog Slat does not, however, provide the court with a sufficient legal basis to grant this motion aside from its bare assertion that it bears no liability to plaintiffs.

Based upon the court's review of the undisputed facts and the conclusion made in this order to grant in part and deny in part Hog Slat's motion for summary judgment, the court has determined that liability may exist for Hog Slat as to plaintiff's claim of negligent design, in so far as it applies to the loss of hogs, and

thus must deny Hog Slat's motion for summary judgment with respect to the cross-claims for contribution and indemnification.

**C. Defendant BCM's Motion for Summary Judgment**

Defendant BCM moves for partial summary judgment on plaintiffs' claims of negligent design, summary judgment on the claims of negligent misrepresentation, and summary judgment on the claims of breach of warranty. For the following reasons the court will grant BCM's motion.

**1. Negligent Design**

BCM moves for partial summary judgment on plaintiffs' claims of negligent design asserting that the economic loss doctrines of North Carolina and Iowa limit BCM's liability to the loss of the hogs. As already stated, this court not only concurs with that assertion, but has issued an order adopting the magistrate judge's "well-reasoned" recommendation that the economic loss doctrine is applicable in this case and plaintiffs' tort claims against co-defendant Hog Slat were precluded except as those claims apply to the loss of the hogs under the "damage to other property" exception to the application of the economic loss doctrine. (Dist. Ct. Order, March 2, 2001, n. 2.) Thus, the court agrees with BCM's assertion that, under the law of the case, both North Carolina and Iowa's economic loss doctrine prohibit tort recovery for economic loss except as the loss fits within the "damage to other property" exception. See Nelson v. Todd's Ltd., 426 N.W.2d 120, 123 (Iowa

1988); Spillman v. Am. Homes, 422 S.E.2d 740 (N.C. Ct. App. 1992). In this case, that "other property" has been determined to include the loss of the hogs. (See id. at 6.)

BCM does not otherwise directly challenge the substantive basis of plaintiffs' claim of negligent design. BCM apparently only seeks partial summary judgment on this claim to limit its liability to loss of the hogs under the discussed "other property" exception to the economic loss doctrine. Since the court has already ordered that this doctrine is applicable, BCM's motion for partial summary judgment on the claims of negligent design is granted, except as those claims apply to the loss of hogs.

**2. Negligent Misrepresentation**

As has been discussed supra, in order for plaintiffs to survive summary judgment on the claims of negligent misrepresentation, they must be able to show that defendant owed them a duty. See Freeman, 516 N.W.2d at 837-838; Sain, 626 N.W.2d at 125; Simms, 537 S.E.2d at 241. BCM is the manufacturer of the flooring. There is nothing in the record to raise a question of fact as to whether BCM was in the business of providing advice or giving information. For the same reasons as discussed above, the court concludes that defendant and plaintiffs engaged in an arm's-length transaction and that plaintiffs cannot show that a duty existed to establish a prima facie case of negligent

misrepresentation. Accordingly, BCM is entitled to summary judgment on these claims.

### 3. Breach of Warranty

Defendant BCM asserts that it is entitled to summary judgment on the breach of warranty claims because plaintiffs only had a one-year warranty based on the unambiguous language of the ten final integrated contracts.

A manufacturer's warranty may be disclaimed or limited in a contract signed between a distributor and buyer. See, e.g., Hunter v. Texas Instruments, Inc., 798 F.2d 299, 302 (8th Cir. 1986) (applying Arkansas law and finding that "a manufacturer not in privity may limit its liability for breach of warranty in a contract between a dealer and a buyer"); Clark v. DeLaval Separator Corp., 639 F.2d 1320 (5th Cir. 1981) (holding that under § 2-316(2) of the Uniform Commercial Code, a manufacturer may properly disclaim warranties or limit the remedies available for breach of warranty by placing language in the dealer's contract); Clevenger & Wright Co. v. A. O. Smith Harvestor Prods., Inc., 625 S.W.2d 906 (Mo. Ct. App. 1981) (manufacturer's disclaimer of express warranties in contract between purchaser and seller held effective against remote purchaser). Thus, an otherwise proper disclaimer pertaining to a manufacturer's warranty made in the seller's contract is effective against the buyer.

Here, the court has already determined that the contracts constitute the final expression of the parties' agreement based on the following provision:

> The Contract as constituted represents the entire integrated agreement between the parties hereto and supersedes any prior negotiations, representation or agreements, either oral or written.

(Compl., Ex. C-L, Art. I.)

Moreover, the final contracts expressly limit warranty obligations to one-year under Article 4(g) which reads:

> Contractor warrants to Owner that materials and equipment furnished under this Contract will be new and of good quality, unless otherwise required or permitted under the Contract Documents and in accordance with the manufacturer's warranties, and that the Work will be free from defects not inherent in the quality required or permitted and will conform to the Contract Documents. Provided, however, that any warrant is subject to such reasonable tolerances and variances as are usual and customary in the trade and subject to such Article VIII below, **the aforesaid warranties are only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less. There are no other warranties of any kind expressed or implied, oral or written.** Contractor disclaims any other warranties. CUSTOMER INITIAL ___

(Compl., Ex. C-L, Art IV (emphasis added).)

While plaintiffs try to assert that they received a ten year warranty for the flooring in a brochure and letter given to them before the contracts were signed, the court concludes that because this alleged express ten year warranty is based upon an agreement

prior to the execution of the integrated written contracts, and because any prior agreement is expressly contradicted by the unambiguous terms of those contracts, the express warranty causes of action are barred by the parol evidence rule.[10] Indeed, the parol evidence rule also bars the use of any prior agreement to explain or supplement the underlying integrated contracts since the contracts were clearly intended as a complete and exclusive statement of the terms of the agreement.

Thus, since the contracts at issue here are integrated contacts that set forth the final expression of the parties' agreements and since this court has held that the length of the flooring warranty was one year, BCM is entitled to summary judgment on plaintiffs' breach of warranty claims.

**D. Defendant Double L Group's Summary Judgment Motion**

Plaintiffs bring ten breach of warranty and negligent misrepresentation claims against defendant Double L. Double L moves for summary judgment asserting that, in light of the undisputed facts, it is entitled to summary judgment as a matter of law since plaintiffs fail to make a prima facie showing of either

---

[10] Under the parol evidence rule, terms which are set forth in a written contract that is intended as the final expression of the agreement between the parties may not be contradicted by evidence of prior agreements or oral statements. See N.C. Stat. § 25-2-202; Iowa Stat. § 554.2202; Phelps v. Spivey, 486 S.E.2nd 226, 229 (N.C. Ct. App. 1997) (holding that the parol evidence rule bars "proof of certain facts, events, agreements, or negotiations that occur prior to or contemporaneously with the execution of a writing intended to be the final expression of the parties' agreement").

negligent misrepresentation or breach of express warranty. After a careful review, the court agrees and for the following reasons grants defendant Double L's motion for summary judgment.

**1. Negligent Misrepresentation**

As has been discussed, to establish a claim of negligent misrepresentation, plaintiffs must first establish that defendant owed them a duty of care. Smith v. Woodwind Homes, Inc., 605 N.W.2d 418, 424 (Minn. Ct. App. 2000).[11] See Freeman, 516 N.W.2d at 837-838; Simms, 537 S.E.2d at 241. One making a representation is only held to a duty of care when supplying information for the guidance of others in the course of a transaction in which one has a pecuniary interest or in the course of one's business, profession, or employment. See Safeco Ins. Co. v. Dain Bosworth, Inc., 531 N.W.2d 867, 870 (Minn. Ct. App. 1995); Sain, 626 N.W.2d at 125; Simms, 537 S.E.2d at 237. Moreover, a negligent misrepresentation claim does not lie "between parties to a commercial transaction negotiating at arm's-length." Travelers Express Co., Inc. v. Am. Express Integrated Payment Sys., Inc., 80

[11] At the outset, the court notes that both parties apply Minnesota law as to the negligent misrepresentation claims asserted against Double L. While the court has already ruled that the choice of law provisions of the underlying contracts dictate that North Carolina and Iowa law apply for plaintiffs' tort claims, the court, nonetheless, concludes that it reaches the same result on the negligent misrepresentation claims whether it applies Minnesota, Iowa, or North Carolina law.

F. Supp. 2d 1033, 1041 (D. Minn. 1999). See Sain, 626 N.W.2d at 125; Simms, 537 S.E.2d at 237.

After careful review of the undisputed facts, the court concludes that Double L engaged in an arm's-length transaction with plaintiffs. Accordingly, the claims for negligent misrepresentation must fail. Double L was not hired by plaintiffs to advise them or provide guidance. Double L is a distributor for BCM. They were attempting to sell BCM's flooring to be installed in plaintiffs' hog nurseries.[12] Furthermore, plaintiffs by their own admission have had extensive experience in the hog farming industry. Therefore, the court concludes that the parties were negotiating this transaction at arm's-length and as sophisticated equals.

Because Double L engaged in an arm's-length transaction with plaintiffs, their claims must fail, and the court grants Double L summary judgment on the negligent misrepresentation claims.

**2. Breach of Warranty**

Plaintiffs assert that Double L breached an express warranty. Double L now moves for summary judgment arguing that it cannot be held liable for any purported breach in light of the undisputed facts.

---

[12] As discussed, in April 1994, Double L's representative met with plaintiffs to negotiate a commercial transaction, and the undisputed facts demonstrate that Double L's interest in any interaction with plaintiffs was to sell BCM's product to plaintiffs, not to advise or provide guidance to plaintiffs.

As has been discussed, the court has already determined that the only warranties for the flooring were set forth in the ten written contracts and that plaintiffs' claims of breach of warranty must be dismissed because they are barred under the parol evidence rule by the express terms of the final integrated written contracts. The warranties in the written contracts expressly provided that they were, "only for one (1) year from the date of substantial completion or for such period as the manufacturer's warranty, whichever is less." Each contract also contained an unambiguous integration clause.

Accordingly, the court finds as a matter of law that because the contracts at issue are integrated contracts that constitute the final expression of the parties' agreement, plaintiffs are barred by the parol evidence rule from alleging any prior agreement that contradicts the terms of these contracts which expressly provide for a one-year warranty. As such, plaintiffs' claims for breach of warranty must be dismissed and defendant Double L is entitled to summary judgment on these claims.

**CONCLUSION**

Based on the foregoing, the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Hog Slat's motion for summary judgment [Doc. No. 91] is granted as it applies to plaintiffs' claims for

negligent misrepresentation and violations of North Carolina's Unfair and Deceptive Trade Practices Act and these claims are dismissed with prejudice;

2. Defendant Hog Slat's motion for summary judgment [Doc. No. 91] is denied as it applies to plaintiffs' claim for negligent design, as these claims apply to the loss of hogs pursuant to the previous order of the court, and the cross-claims for contribution and indemnification of co-defendants;

3. Defendant BCM's motion for partial summary judgment [Docket No. 97] is granted and defendant BCM is granted full summary judgment on the breach of warranty and negligent misrepresentation claims and is granted summary judgment as to the negligent design claims except as those claims relate to the loss of the hogs; and

4. Defendant Double L's motion for summary judgment [Docket No. 105] is granted in its entirety and all of plaintiffs' claims against defendant Double L are dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: April 25, 2002

David S. Doty, Judge
United States District Court

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

- ***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.