UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-----

Holden Farms, Inc., a Minnesota Corporation; Rod Garness; Eugene C. Ward; Randy Swanson; Rick Anderson d/b/a Circle A Farms; Tim Sanborn; AJ Farms, a Minnesota General Partnership; Dennis Kofstad; Marlin Kruckeberg; and Pork Avenue, LLP, a Minnesota Limited Liability Partnership,

Plaintiffs,

vs.

BCM Manufacturing, Ltd., a Canadian Corporation; and Double L Group Ltd., an Iowa Corporation,

Defendants

Civil File No. 00-CV-785

**ORAL ARGUMENT REQUESTED**

-----

**DEFENDANT BCM MANUFACTURING, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION**

-----

## INTRODUCTION

Defendant, BCM Manufacturing, Ltd. (hereinafter, "BCM") seeks Summary Judgment of Plaintiffs Breach of Warranty theory. This court had previously granted all Defendants Motions for Summary Judgment on April 26, 2002, entering judgment against Plaintiffs on all theories pled. On appeal the Eighth Circuit affirmed in part and reversed in part this Court's Order. On remand, Plaintiffs return to this Court with their breach of warranty and design defect theories reinstated. At the time of the original Summary Judgment Motion BCM sought dismissal of Plaintiffs warranty theories on two alternative grounds. This Court based its grant of Summary Judgment on the first argument advanced, that the contracts between Hog Slat and the Plaintiffs limited Plaintiffs to a one (1) year warranty period and that the claims brought by the Plaintiffs

fell outside that timeline. This Court did not address the second argument advanced by BCM, specifically that even if BCM's warranty against defects in materials or workmanship were considered by the Court, Plaintiff's possessed no evidence that warranty had been breached. This Court did not address that portion of BCM's Motion for Summary Judgment and accordingly, BCM once again seeks Summary Judgment on Plaintiffs breach of warranty theory.

## STATEMENT OF FACTS

This Court's Order of April 26, 2002 provides a description of the factual background of the Holden Farms claims. (*See*, April 26, 2002 Order, at pp. 2-5 attached to the Affidavit of Richard W. Sobalvarro as Exhibit A). This action arises from the use of BCM polypropylene hog slats in ten nursery barns owned by Holden Farms or its contract producers, the individually named Plaintiffs. As stated by this Court, "Plaintiffs allegedly began to notice problems with the flooring in the first three nurseries built in 1994. Plaintiffs contend that these problems resulted from the corrosion of the steel beams that supported the flooring causing the floors to buckle. Plaintiffs further allege that the buckling created gaps in the flooring that resulted in the death of several hogs. Plaintiffs have since replaced all of the steel beams in the ten buildings and removed some of the flooring that they claim was damaged by the corrosion of the steel beams." (*See*, Order of April 25, 2002 at p. 4 attached to the Affidavit of Richard W. Sobalvarro as Exhibit A). Neither Double L Group nor BCM supplied or sold the steel beams used in the construction of the nursery barns to the Plaintiffs. (*See*, Order of April 25, 2002 at p. 3-4 attached to the Affidavit of Richard W. Sobalvarro as Exhibit A). It is undisputed that the rusting steel beams damaged BCM's flooring causing the problems in the nursery barns. (*See*, Barry Holden depo. at pp. 92-93 attached to the Affidavit of Richard W. Sobalvarro as Exhibit B).

BCM Manufacturing flooring is sold in the United States exclusively through Double L Group, an independently owned distributor. The relationship between Double L Group and BCM is controlled, depending on the year in question, by one of two distributorship agreements. The first agreement between Double L and BCM was executed on January 14, 1980 and extended by written agreement dated February 12, 1981. (*See*, Norbert Borcherding depo. Exhibit 1, attached to the Affidavit of Richard W. Sobalvarro as Exhibit C). In September of 1994 the second distributorship agreement was executed between Double L Group and BCM. That agreement is attached to the Affidavit of Candy B. Olson as Exhibit A, filed in support of Double L Group's Motion for Summary Judgment of May 7, 2004. Those agreements authorize and describe the express warranties which may be extended by Double L with BCM products.

Double L Group came into existence in 1973 operating under the name of Garnavillo Sheet Metal. Garnavillo Sheet Metal became Long Lasting Farm Equipment at the time of its incorporation in 1976. (*See*, Norbert Brocherding depo. at pp. 6-7 attached to the Affidavit of Richard W. Sobalvarro as Exhibit D). In the mid-1990's Mr. Borcherding changed the name of his business from Long Lasting Farm Equipment to Double L Group. (*See*, Norbert Borcherding depo. at pp. 7-8 attached to the Affidavit of Richard W. Sobalvarro as Exhibit D). Norbert Borcherding is the president and an owner of Double L Group and was the president of Long Lasting Farm Equipment. (*See*, Norbert Borcherding depo. at p. 7 attached to the Affidavit of Richard W. Sobalvarro as Exhibit D and *see also*, Distributorship Agreements, attached as Exhibit C to the Affidavit of Richard W. Sobalvarro and Exhibit A to the Affidavit of Candy B. Olson filed in support of Double L Group's Motion for Summary Judgment of May 7, 2004). BCM Flooring is simply one of a group of products which Double L sells, whether made by other manufacturers or manufactured

by Double L itself. BCM does not have an ownership interest in Double L Group. (*See*, Norbert Borcherding depo. at p. 7 attached to the Affidavit of Richard W. Sobalvarro as Exhibit D).

Double L Group produced a serious of documents regarding warranties which accompanied BCM products. (*See*, Norbert Borcherding depo. at Exhibits 10 and 11 attached to the Affidavit of Richard W. Sobalvarro as Exhibit E and Exhibit F). In his deposition, Mr. Borcherding was unable to specifically testify as to which document reflected a warranty being used by BCM at the time of the sales to Hog Slat in 1994 and subsequent years. (*See*, Norbert Borcherding depo. at pp. 91-97 attached to the Affidavit of Richard W. Sobalvarro as Exhibit D).

The deposition of Warren Hutchings, the president of BCM, identified the period of the warranty and the warranty language which was provided with BCM's Filter Eeze products (the flooring brand name used in Plaintiffs' barns). Warren Hutchings identified the warranty as that language stated in the second page of Norbert Borcherding's deposition Exhibit 10. (*See*, Warren Hutchings depo. at pp. 4-66 attached to the Affidavit of Richard W. Sobalvarro Exhibit G). Warren Hutchings further testified that the period of the warranty was not accurately reflected in that document as that writing stated only a five (5) year warranty period. Mr. Hutchings testified that the warranty had been extended to ten (10) years. (*See*, Warren Hutchings depo. at p. 64 attached to the Affidavit of Richard W. Sobalvarro as Exhibit G). In Mr. Hutchings deposition, he was asked about a fax of June 26, 1989 from then BCM president and owner, Peirre Moreau to Norbert Borcherding at Long Lasting Farm Equipment. The document was produced by Double L as LL0827 and is included in Borcherding deposition at Exhibit 11. (*See*, Exhibit D to the Affidavit of Richard W. Sobalvarro). That document identifies the BCM warranty as changing from a five (5) year warranty period to a ten (10) year

warranty period on February 1, 1990. (*See*, Warren Hutchings depo. at p.65 attached to the Affidavit of Richard W. Sobalvarro as Exhibit G).

All of the warranty documents produced by Double L, discussed by Mr. Borcherding or Mr. Hutchings in their depositions or identified in the distributorship agreements provide for virtually identical warranty language. Specifically, the warranty identified by Mr. Hutchings states, "we guarantee that this flooring will not fail by reason of structural defects or faulty workmanship, nor will the anti-skid ridges wear out for a full five (5) years after the date of purchase. (*See*, Norbert Borcherding depo. Exhibit 10 at p. 2 attached to the Affidavit of Richard W. Sobalvarro as Exhibit E and Warren Hutchings depo. at p.64 attached to the Affidavit of Richard W. Sobalvarro as Exhibit G). Similarly, page 3 of Borcherding deposition Exhibit 10 states, "the manufacturer guarantees that this flooring will not fail by reason of structural defects of (sic) faulty workmanship for a full ten years from date of purchase". The distributorship agreement of September 1994 is also consistent with this language. That distributorship agreement states, "the manufacturer guarantees that this flooring will not fail by reason of structural defects or faulty workmanship for a full ten (10) years from the date of purchase provided that the flooring is used for the purpose for which it was intended." (*See*, ¶ 13 p. 2 of the September 1994 Double L/BCM Distributorship Contact attached as Exhibit A to the Affidavit of Candy B. Olson, filed in support of Double L Group's Motion for Summary Judgment of May 7, 2004).

## ARGUMENT

Summary Judgment is appropriate because no evidence of a defect in material or workmanship and accordingly no breach of the warranty BCM authorized to be extended with its products can be proven or is even claimed by the Plaintiffs. As identified above, the warranty

extended by BCM is specifically stated to be a guarantee against structural defects or faulty workmanship. No other warranty was authorized by BCM to be conveyed to any buyer of its products through either distributorship agreement with Double L Group.

The Plaintiffs claim to be beneficiaries of the warranty extended by BCM Manufacturing. As a third-party beneficiary of that warranty, Holden Brothers and the individual Plaintiffs not only receive the benefits of that warranty, but also its limitations and restrictions. In, Hydra-Mac, Inc. v. Onan, 450 N.W.2d 913 (Minn. 1990) the Minnesota Supreme Court was confronted with a similar factual scenario where a downstream purchaser of engines manufactured by Onan Corporation advanced a claim under Onan's express warranty. The court in addressing International Harvesters (the downstream purchaser) claim stated:

> Thus, the Trial Court's ruling that International Harvester, as purchaser of the skid loader containing the Onan engine, was a third-party beneficiary of any warranties running to Hydra-Mac was proper, and appellant (Onan) does not seem to challenge that ruling. But, as beneficiary of those warranties, International Harvester is equally subject to any disclaimers of warranty which would have been effective to bar any of Hydra-Mac's claims. As a seller, Onan may disclaim both express and implied warranties. Minn. Stat. §336.2-316 (1988). A valid disclaimer extends to the original purchaser as well as to all parties covered as third-party beneficiaries.

Hydra-Mac, 450 N.W.2d at 916 (emphasis added). *See also*, SCM Corp. v. Dalteak Corp., 702 F.Supp. 1428, 1432 (D.Minn. 1988). (A limitation of remedy is equally effective against a buyer and any third-party beneficiaries).

Here, Plaintiffs cannot unilaterally expand BCM's warranty. At both this Court and on Appeal to the Eighth Circuit Plaintiffs claimed to be beneficiaries of BCM's warranty. They claimed that the warranty was not restricted or limited by the contract with Hog Slat which provided for a one (1) year warranty. Plaintiffs cannot be both the beneficiary of BCM's authorized warranty and argue that they are not bound by its limitations of warranting the

product as to defects in materials and workmanship only. If the Plaintiffs want to claim to be beneficiaries of the warranty they must take the warranty as extended and authorized by BCM.

Plaintiff's claims center exclusively on damage to the flooring caused by rusting and corroding steel beams which grew in width braking BCM's Filter Eeze Maxima flooring and causing it to buckle. Plaintiffs own expert witnesses make no other claim. (*See*, Expert Witness Report of Richard Nicolai attached to the Affidavit of Richard W. Sobalvarro as Exhibit H). The Holden brothers themselves admit that there was nothing wrong with the flooring itself. (*See*, Kent Holden depo. at p. 99 lines 15-20 and p. 94 lines 1-9attached to the Affidavit of Richard W. Sobalvarro as Exhibit I). In fact, the Holden's did not even replace the flooring in seven out of the ten barns but rather removed the flooring, replaced the rusting steel beams with fiberglass beams and put the exact same flooring pieces back in the nursery barns. (*See*, Kent Holden depo. at pp. 127-129 attached to the Affidavit of Richard W. Sobalvarro as Exhibit I). Obviously, there is no claim or proof of a defect in either materials or workmanship. As BCM's warranty is only as to defects in materials and workmanship the Plaintiff must show a defect in one of those two areas to recover under the warranty. Plaintiffs do not even make a claim regarding either the material or the workmanship in the production of the Filter Eeze Maxima Flooring.

BCM anticipates that Plaintiff will argue that statements by Double L president, Norbert Borcherding bind BCM to some other more expansive warranty than BCM's warranty against defects in materials and workmanship. Plaintiff's tried a version of this argument at the previous Summary Judgment Motion hearing. Obviously, Plaintiffs cannot have it both ways. Either they attempt to recover under the warranty BCM extended or claim that Double L extended some different warranty for which it alone is responsible. Hydra-Mac leaves little question that if a

party claims to be a third-party beneficiary of a warranty they take that warranty as it is provided, limited or restricted.

Conduct by Mr. Borcherding cannot bind BCM in any way. Schweich v. Ziegler, 463 N.W.2d 722 (Minn. 1991), clearly establishes that the conduct of a distributor does not bind a manufacturer. Schweich specifically found that no agency relationship existed between the independent distributor and the manufacturer of products sold by that distributor absent a right to control the manner and performance of the distributors business. The distributorship agreements do not establish a right in BCM to control the business operations or performance of Double L Group and in fact clearly demonstrate nothing more than a "run of the mill" distributorship contract between a manufacturer and a reseller of its products. As Double L is not BCM's agent any statements or conduct by Mr. Borcherding cannot bind BCM.

The distributorship agreement with Double L equally prohibits Borcherding from binding BCM. The distributorship agreement of January 14, 1980 specifically provides:

> IX. WARRANTIES OF BCM
>
> DISTRIBUTOR understands and agrees that BCM extends only a specific and limited warranty in connection with its hog flooring system, and which may be changed from time to time by BCM. In the event DISTRIBUTOR or its dealers extend any additional warranty such as by enlarging the scope or period of warranty or undertaking a warranty of fitness for any particular purpose or any other obligation not encompassed expressly within BCM warranty, then in such case BCM shall not be responsible therefor and DISTRIBUTOR and its dealers shall on such instance have no recourse against BCM with respect thereto, and additionally shall indemnify and hold BCM harmless from any and all costs and liabilities relating thereto. BCM has the right to investigate all documents and to interrogate any persons involved in the filing of a claim under warranty for the purpose of ascertaining the validity thereof; and, if any fraudulent claim is discovered it shall be the basis for termination of this Agreement at the option of BCM.

(*See*, Distributorship Agreement at p. 6 attached to the Affidavit of Richard W. Sobalvarro as Exhibit C).

The distributorship contracts language providing for indemnification is the basis for BCM's Crossclaim against Double L. Contractual indemnification is clearly enforceable. *See*, Hendrickson v. Minnesota Power and Light Co, 258 Minn. 368, 104 N.W.2d 843, 848 (1960); and, Sorenson v. Safety Flate, Inc., 235 N.W.2d 848 (Minn. 1975).

The distributorship agreement also addresses Double L's status as an independent dealer. The 1980 agreement states:

> X. CONSTRUCTION, MODIFICATION AND ASSIGNMENT
>
> 1) This Agreement shall not be so construed as to constitute DISTRIBUTOR, the agent or employee of BCM for any purpose whatsoever, the DISTRIBUTOR agrees that he has no authority to assume or incur any obligation or responsibility, nor make any warranty, express or implied, for or on behalf of, or in the name of BCM, or to bind or attempt to bind, BCM in any manner or thing whatsoever.

(*See*, Distributorship Agreement at p. 6 attached to the Affidavit of Richard W. Sobalvarro as Exhibit C).

A distributorship agreement's language regarding the status and relationship between the manufacturer and the distributor is both illustrative and controlling of the nature of that relationship. (*See*, Children's Broadcasting Crop. v. Walt Disney Co., 245 F.3rd 1008 (8thCir. 2001). Nothing about the distributorship agreement would authorize Double L Group to act as the agent of BCM in any circumstances. The distributorship agreement does nothing more than setup a right by Double L to sell BCM products within a specific geographic territory. This is nothing more than a standard distributorship agreement between manufacturer and reseller.

Nothing about either the 1980 or the 1994 distributorship agreement allows BCM to control the activities of Double L. Accordingly, Double L's conduct cannot bind BCM.

## CONCLUSION

Based on the forgoing summary judgment on plaintiff's breach of warranty theory is appropriate. BCM authorized Double L to extend a ten (10) year non-prorated warranty as to defects in materials or workmanship. Plaintiff's do not even claim a defect in materials or workmanship but rather allege they were harmed by the use of steel beams, sold by Hog Slat, to support BCM's Filter Eeze Flooring.

Dated this 8th day of June, 2004.

RAJKOWSKI HANSMEIER LTD.

By s/Rich Sobalvarro

Richard W. Sobalvarro - 204638
Attorneys for Defendant BCM
11 North Seventh Avenue
P.O. Box 1433
St. Cloud, MN 56302
Telephone: (320) 251-1055