UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

Holden Farms, Inc., a Minnesota Corporation; Rod Garness; Eugene C. Ward; Randy Swanson; Rick Anderson d/b/a Circle A Farms; Tim Sanborn; AJ Farms, a Minnesota General Partnership; Dennis Kofstad; Marlin Kruckeberg; and Pork Avenue, LLP, a Minnesota Limited Liability Partnership,
Plaintiffs,

Court File No. 00-CV-785 DSD|SRN

**ORAL ARGUMENT REQUESTED**

vs.

Hog Slat Inc., a North Carolina Corporation; BCM Manufacturing, Ltd., a Canadian Corporation; and Double L Group Ltd., an Iowa Corporation,
Defendants.

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BCM MANUFACTURING'S MOTION FOR SUMMARY JUDGMENT**

---

## I. INTRODUCTION

Plaintiffs submit this Memorandum of Law in Opposition to Defendant BCM Manufacturing, Ltd.'s (hereinafter "BCM's") Motion for Summary Judgment ("Motion"). BCM requests dismissal of Plaintiffs' breach of warranty claims. Because the evidence is sufficient to make out a *prima facie* case of breach of warranty against BCM, its Motion must be denied.

Plaintiffs commenced this action in March 2000 against Defendants Hog Slat, Inc. ("Hog Slat"), BCM Manufacturing, Ltd. ("BCM"), and Double L with claims of breach of contract, breach of express warranty, negligent design and negligent misrepresentation against Hog Slat, breach of express warranty and negligent misrepresentation against Double L, and breach of

SCANNED
JUL 1 4 2004
U.S. DISTRICT COURT MPLS

express warranty, negligent design, and negligent misrepresentation against BCM. This Court ordered the dismissal of all claims against Hog Slat, except as to the loss of hogs, pursuant to Orders dated March 2, and April 26, 2002, respectively. On April 26, 2002, this Court also granted BCM and Double L's respective motions for summary judgment, leaving only Plaintiffs' claims concerning the loss of hogs. On June 3, 2002, this Court dismissed the remaining claims and entered final judgment. On July 9, 2002, Plaintiffs' filed their Notice of Appeal.

With its October 28, 2003 decision, the Eighth Circuit Court of Appeals affirmed the dismissal of all claims against Hog Slat, and also affirmed the dismissal of the negligent misrepresentation claims against BCM and Double L. However, the Eighth Circuit reversed this Court's grant of summary judgment as to Double L and BCM on the breach of warranty claims, and further reversed as to BCM on the negligent design claim. BCM is now moving for summary judgment on only the breach of warranty claim against it, on alternative grounds not considered by the Eighth Circuit.

## II. FACTUAL BACKGROUND

Plaintiffs hereby incorporate herein by reference the Factual Background set forth in Plaintiffs' Memorandum of Law in Opposition to Defendant Double L Group's Motion for Summary Judgment, submitted at the same time as this Memorandum, together with the citations to the record and the previously submitted November 21, 2001 Affidavit of Dustan J. Cross and attached Exhibits. That statement of facts summarizes the entirety of the claims against the Defendants.

## III. ANALYSIS

The heart of BCM's motion for summary judgment is that there was no manufacturing defect in the plastic flooring, and since BCM did not install or sell the underlying steel support beams, there can be no breach of warranty claim against BCM. BCM ignores the fact that it and

its distributor Double L were advising Hog Slat, Plaintiffs, and others, to install the Maxima flooring on steel support beams. BCM also ignores that it has already recognized that its product -- properly installed in accordance with its prior instructions -- would not possibly last through the 10-year warranty period. BCM's brief discussing the breach of warranty claims is devoid of legal authority supporting its argument.

**A. BCM and/or Double L Created and Extended a Warranty.**

Throughout its Brief, BCM ignores the creation of and responsibility for the warranty at issue – the breach of which clearly caused Plaintiffs' damages. Minn. Stat. § 336.2-313(1) states that a seller can create an express warranty under any of the following circumstances:

> (1) Express warranties by the seller are created as follows:
>
> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
>
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
>
> (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

"No particular words are required to constitute an express warranty, and the representations made must be interpreted as an ordinary person would understand their meaning, with any doubts resolved in favor of the user." *McCormack v. Hankscraft Co., Inc.*, 278 Minn. 322, 336, 154 N.W.2d 488, 498 (1967). The test is not whether the seller actually intended to be bound, but only that he made an affirmation of fact, the natural tendency of which was to induce the sale. *Pritchard v. Ligget & Meyers Tobacco, Co.* 350 F.2d 479 (1965 3rd Cir.).

The existence of a warranty is usually a question of fact for the fact-finder. *Rappaport v. Boyer & Gilfillan Motor Co.*, 239 Minn. 477, 479, 59 N.W.2d 302, 304 (1953) ("It is for the jury to decide from all the evidence of the oral transaction what was the evident purpose and intent of the parties in requesting and making representations."); *Northern States Power Co. v. ITT Meyer Industries*, 777 F.2d 405, 411 (8th Cir. 1985) (applying Minnesota law). A buyer is under no duty to investigate a representation made to it unless they know it is false. *Overstreet v. Norden Labs, Inc.*, 669 F.2d 660 (4th Cir. (Va.) 1955); *Rappaport v. Boyer & Gilfillan*, 59 N.W.2d 302 (Minn. 1953) (no duty to investigate a seller's statements).

It is undisputed that Plaintiffs were presented with promises and representations about the Maxima flooring which induced Plaintiff's purchase and method of installation. At the April 1994 Sales Presentation, Mr. Borcherding of Double L and Mr. Burge of Hog Slat presented Holden Farms with a document entitled "Filter-Eeze Maxima Nursery / Grower Flooring." Deposition Exhibit 4 (hereinafter "Presentation Document"); *see* Kent Holden depo., page 26. That Presentation Document describes the supposed benefits of BCM's Filter-Eeze flooring over more traditional, metal flooring slats. Mr. Borcherding admits that the Presentation Document was actually drafted by Double L. Borcherding depo., page 36. The Presentation Document specifically stated that the Filter-Eeze flooring comes with a "full 10 year non-prorated" warranty; that it has a "20 year proven record of performance" and that its "longer life increases product value over other floorings." Presentation Document, page 3. On page 4 of the Presentation Document, there is a section which states "FILTER-EEZE HAS MAJOR ADVANTAGES OVER TRADITIONAL FLOORS" including "20 years on the market – proven and tested" with a "15-20 year life expectancy" and a "10 year non-prorated warranty" that "increases value of product". On that same page, there is a section entitled "Filter-Eeze Maxima Flooring Supported with Steel Beams" which includes diagrams of the slats attached to the steel

support beams. The Presentation Document specifies the dimensions of the steel beams necessary. Holden Farms opted for the Maxima flooring based on these representations, specifically that the plastic Maxima flooring was more comfortable, easier to clean and had a longer life expectancy and warranty than the woven wire. *See, e.g.,* Kent Holden depo., page 32.

The Official Commentary to U.C.C. § 2-313 states that "[n]o specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain. In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact." U.C.C. § 2-313, cmt. 3. Moreover, "[t]echnical specifications, blueprints and the like can afford more exact description than mere language and if made part of the basis of the bargain the goods must conform with them." *Id.*, cmt. 5.

Again, BCM and Double L do not dispute that the warranty was given, that Plaintiffs relied upon it, and that Plaintiffs suffered significant damage because the Maxima flooring did not perform as promised. Their only argument concerns who provided the warranty and who now bears liability for the warranty. BCM claims that Double L acted on its own in creating and presenting the warranty. Double L argues that it was only passing along BCM's warranty. Thus, there is an issue of disputed material fact proper for a jury's consideration.

**B. A Breach of Warranty Claim Does Not Require Proof of a Defect in the Goods Themselves.**

In its Brief, BCM attempts to argue that without evidence of defects in the plastic flooring itself, Plaintiffs cannot maintain a breach of warranty claim against BCM. *See* BCM Brief, pages 5-6. As a general principle of law, the assertion that a breach of warranty claim must show either a structural defect or faulty workmanship in the underlying product is simply

wrong. *See Community Television Services, Inc. v. Dresser Industries, Inc.*, 586 F.2d 637, 641 n.8 (8th Cir. 1978) ("Proof of a specific defect [is] not essential to [the plaintiff's] recovery on the breach of express warranty count."). Moreover, the manufacturer of a product may become liable if it knows or should know that the product is apt to cause harm if not used in a specific manner and fails to furnish adequate warning as to the dangers inherent in its use. *See, e.g., Lovejoy v. Minneapolis-Moline Power Implement Co.*, 79 N.W.2d 688, 692 (Minn. 1956) (discussing breadth of liability for manufacturer).

Warranties have been found in almost every type of oral or written representation made by a seller to a buyer of goods or other merchandise. Advertisements can be warranties. *Hawkins Const. Co. v. Matthews*, 209 N.W.2d 643 (Neb 1973). Statements from salespeople can be a warranty. *Shotkoski v. Standard Chem. Mfg. Co.*, 237 N.W.2d 92 (Neb. 1975); *Ricwil v. Pappas*, 599 So.2d 1126 (Ala. 1992) (product brochure saying piping could take cold temperatures supported an express warranty claim); *see Ewers v. Eisenzopf*, 276 N.W.2d 802 (Wis. 1979) (recognizing that the statement that shells were suitable for salt water aquarium if rinsed related to the quality or condition of the goods sold). An express warranty claim can cover component parts. *Sylvestri v. Warner Swasey Co* 298 F.2d 598 (2nd Cir. 1968) (statement about back hoe scoop could be warranty, where back hoe was attached by buyer to front loader).

In *Community Television Services, Inc. v. Dresser Industries, Inc.*, 586 F.2d 637 (8th Cir. 1978), the seller of a broadcast tower appealed a jury's verdict in favor of the owner following the collapse of the tower in a blizzard. The seller claimed that even the plaintiff's experts agreed that the tower "conformed in a mathematical or analytical sense" to the technical design specifications in the contract. *Id.* at 640. However, the seller had provided the buyer with numerous advertisements regarding the tower's performance in adverse weather conditions. The Eighth Circuit affirmed, holding that "[b]reach of warranty created by statements describing the

specific capacity of goods is proved when the product is shown by direct or circumstantial evidence to have failed to perform reasonably and safely the function for which it was intended by the manufacturer." *Id.* at 641.

In *Earle M. Jorgenson Co. v. Tesmer Mfg. Co.*, 459 P.2d 533 (Ariz. App. 1969), the statement that steel being sold was compatible with buyer's welding process what held to be a warranty despite the argument that this was an "extrinsic matter" that didn't relate to the goods themselves. The court said a statement that a particular type of steel can be welded by a certain process then being used by buyer is an affirmation or promise relating to the goods. *See also, Western Rec. Veh., Inc. v. Swift Adhesives, Inc.*, 23 F.3d 1547 (9th Cir. 1994) (an RV maker was found to have no duty to test when an express statement from adhesives manufacturer would work as well on fiberglass as it had on aluminum).

In *Royce Chemical Co. v. Sharples Corp.*, 285 F.2d 183 (2nd Cir. 1960), the court found that the warranty that a centrifuge was suited to a buyer's manufacturing process could support a warranty claim as such a statement of incompatibility was sufficiently related to the product. In *Beech Aircraft Corporation v. Flexible Tubing Corp.*, 270 F.Supp. 548 (D. Conn. 1967), a note on a drawing stating that rubber compound being compatible with teflon supported a claim of express warranty.

As the above sample of cases amply demonstrates, a product need not be "defective" in the product strict liability sense of the term to breach a warranty. Even if a product may be used in another manner successfully, it is the manner in which it was warranted to work which is critical and upon which a warranty claim may be based. *Elanco Products Company v. Akin-Tunnell*, 474 S.W.2d 789, 792 (Tex. App. 1971). In *Elanco Products*, the court said that if it could be shown that the use of a herbicide following the provided instructions was not effective

against certain weeds, it did not matter for purposes of a breach of warranty claim whether the herbicide was effective if other instructions were followed.

In *Shotkoski v. Standard Chemical Mfg. Co.*, 195 Neb. 22, 237 N.W.2d 92 (1975), a dairy farmer brought an action against a feed manufacturer after a feed representative claimed that the farmer's use of the feed would increase his milk production. The Nebraska Supreme Court explicitly considered and rejected the claim that, because plaintiff only showed that his use of the product according to the manufacturer's instructions caused him loss rather than some inherent defect in the product itself, his claim should be rejected:

> One other aspect of the warranty in this case needs to be mentioned. The evidence does not support the conclusion that any breach of warranty or damage resulting therefrom was occasioned merely by the nature of the product itself. Plaintiff's evidence supports the conclusion that the decrease in production resulted from wrong instructions about the proper way to feed the supplement, i.e. he should not have been instructed to free feed and force feed the supplement simultaneously. Reliance upon the instruction of a seller can give rise to a warranty. *Texsun Feed Yards, Inc. v. Ralston Purina Co.*, 5 Cir., 447 F.2d 660, is on point. In that case, the plaintiff purchased from the defendant a supplement to increase the rate of gain in the cattle feed yard. The sale was accompanied by instructions to feed 1.5 pounds per head per day. The plaintiff followed the advice and the weight gain slowed down considerably from what it had been before the feed was administered. It was later established that the proper dosage should have been 2 pounds per day. The court there said: "It is commercially unrealistic to treat the sale of the ration supplement and the rendering of professional advice and assistance. If Texsun was given inaccurate instructions by Ralston's nutrition consultant and if Texsun relied on those instructions to its economic detriment, we can perceive no reason for preventing Texsun's recovery under a breach of warranty theory." If the instructions are part of the "basis of the bargain," they are relevant in determining a breach of the express warranty.

*Id.* at 97.

## C. BCM Did Not Disclaim or Otherwise Limit the Warranty.

BCM's alternative argument is that BCM limited or disclaimed that warranty upon which Plaintiffs' claims are based. BCM relies upon a warranty provision contained in a

Distributorship Agreement between Double L and BCM dated September 6, 1994. *See* BCM Brief, at page 5 (citing to Distributorship Agreement provision whereby BCM guaranteed that its products "will not fail by reason of structural defects or faulty workmanship for a full ten (10) years from the date of purchase").

First, of course, this Distributorship Agreement was not signed until after the presentation by Double L regarding the Maxima flooring, in which Double L stated, both on its own behalf and on behalf of BCM, that the Maxima flooring came with a full, 10-year non-prorated warranty. Second, there is no evidence whatsoever that any limitation or exclusion of the general "full 10-year non-prorated warranty" was ever given to Plaintiffs, either at the time of the sales presentation meeting in April, 1994, or at any time thereafter when the flooring was being delivered to each of the 10 nurseries. Minnesota law requires that the party asserting a warranty disclaimer to establish that the disclaimer was provided **at the time of sale** and constituted an integral part of the transaction; a disclaimer cannot come about at a later time. *See Dougall v. Brown Bay Boat Works & Sales, Inc.*, 178 N.W.2d 217, 223 (Minn. 1970).

Under Minnesota law, seller's warranties under Article 2 of the U.C.C. extend to "any person who may reasonably be expected to use, consume, or be affected by the goods or who is injured by the breach of warranty. A seller may not exclude or limit the operation of this section." Minn. Stat. § 336.2-318. The term "person" includes corporations and other business organizations. Minn. Stat. § 336.1-201(28), (30). As the Minnesota Supreme Court has recognized, § 336.2-318 "is somewhat broader than the broadest of the three options recommended by the drafters of the model U.C.C. in 1966." *See Minnesota Mining & Mfg. Co. v. Nishika Ltd.*, 565 N.W.2d 16, 20 (Minn. 1997). "Under section 336.2-318, this court has sanctioned the recovery of lost profits (one form of economic loss) by a third-party beneficiary whose damages arose from a remote seller's breach of warranty." *Id.* (*citing Hydra-Mac*, 450

N.W.2d at 916).[1] "[T]hose who purchase, use, or otherwise acquire warranted goods have standing to sue for purely economic losses." *Id.* at 21.

*S-C Industries v. American Hydroponics Systems, Inc.*, 468 F.2d 852 (5th Cir. 1972), is quite similar factually to the claims raised in this case. In *S-C Industries*, the plaintiff constructed a greenhouse using equipment provided by the defendant. The equipment included a "special warranty" purporting to limit the defendant's warranty to a guarantee that the products would "be free from defects in materials and workmanship...." *See id.* at 853 n.2. In addition to the materials, however, the defendant also gave the plaintiff a set of plans and specifications specifying that its trusses could tolerate a certain amount of snow weight. *Id.* at 854. After the plaintiff's building collapsed, the court affirmed a finding of breach of warranty that the product, although not "defective," did not perform as promised when the product was installed in accordance with the manufacturer's directions.

Minnesota does recognize that while a manufacturer's warranty extends under § 336.2-313 to persons such as Plaintiffs who could reasonably be expected to use or acquire the good sold, such third-party beneficiaries take subject to the limitations on warranty that the manufacturer gives to the distributor or seller. *Hydra-Mac, Inc. v. Onan Corp.*, 450 N.W.2d 913, 916 (Minn. 1990) ("A valid disclaimer extends to the original purchaser as well as to all parties covered as third party beneficiaries."). However, "[w]hen terms of an express warranty and a disclaimer cannot be reconciled, the language of the express warranty prevails." *Id.* at 917.

In this case -- as BCM and Double L make clear in their respective arguments -- there is no dispute that the warranty at issue was extended to Plaintiffs and that Plaintiffs relied upon it.

---

[1] In *Minnesota Mining & Mfg.*, the Court concluded that § 336.2-318 does not reach "a plaintiff who is seeking lost profits unaccompanied by physical injury or property damage *and* who never used, purchased, or otherwise acquired the goods in question." *Id.* In this case, of course, Plaintiffs did ultimately use and purchase BCM's Maxima flooring (through Double L and Hog Slat), and so the precise holding of that case does not apply.

There is only conflicting evidence regarding the limitations that BCM imposed on Double L about the warranty that BCM made available. First, Mr. Borcherding claims that while Double L was not authorized to extend an additional warranty over and above what BCM provided, it had also never in fact ever done so, and that the warranty Double L provided was fully authorized by BCM. Borcherding depo., pages 13-14.[2] Moreover, Exhibit 6 demonstrates that, contrary to BCM's argument, BCM knew that Double L was promoting and marketing an unlimited, broad 10-year warranty without any conditions, limitations, or exclusions. Exhibit 6 contains various drafts of advertising copy that Double L wanted to use on BCM's behalf for inclusion in its dealer newsletter. The advertising copy was sent just 6 days **after** the Distributorship Agreement that BCM now claims effectively limits its warranty to both Double L and Plaintiffs to the terms set forth in that Agreement. *Compare* Deposition Exhibit 1, pages 13-15 (dated September 6, 1994), *with* Deposition Exhibit 6 (dated September 12, 1994). That advertising copy, prepared by Double L for BCM's use, stated without any limitation whatsoever that the BCM "Maxima" flooring came with a "full 10 year non-prorated warranty" (and also stated that it was compatible for use with a "low cost steel support system"). Warren Hutchings of BCM specifically reviewed and approved the use of this advertising copy, making only two minor, typographical corrections. Deposition Exhibit 6 (**LL0867**). Therefore, there is at least a material question of fact as to whether BCM authorized Double L, on its behalf, to extend an unlimited "full" 10 year non-pro-rated warranty" on the Maxima flooring.

It should be emphasized that neither BCM nor Double L make any argument that any limitations or exclusions on the "full" warranty were **ever** communicated at any time to any of

[2] Indeed, the basis of Double L's argument that it is entitled to summary judgment on the breach of warranty claim is that it was merely passing along BCM's broad, unlimited 10-year warranty, while BCM is apparently suggesting that Double L, without authorization, expanded the warranty beyond what it allowed. The very fact that BCM and Double L are taking contrary positions regarding who authorized what warranty should be sufficient to preclude summary judgment on either party's motion.

the Plaintiffs, nor is there any evidence to support such a claim. No limitations or exclusions accompanied any of the product delivered to Plaintiffs' nursery sites, nor were there any such limitations or exclusions contained in the bills of lading or other sale instruments accompanying the product. Plaintiffs were told that this product, designed and intended for use in a hog confinement facility, would last for 10 years if properly installed; it was installed with the installation recommendations and instructions provided by Double L (which, according to Mr. Borcherding, were originally developed and approved by BCM), and the flooring did not last more than 3-4 years.

Lastly, BCM argues that Double L had no right under the Distributorship Agreement to bind BCM with unilateral changes of BCM's warranty. *See* BCM's Brief at page 8. That point of law is not at issue. BCM *could* offer a warranty as it saw fit. Double L, as the seller, *could* offer whatever warranty it liked. Whether the warranty offered to Plaintiffs did or did not exceed the warranty authorized by BCM is precisely the hotly-disputed issue between BCM and Double L, and is a matter for the jury. In this case, BCM is arguing that the warranty Double L gave at the sales presentation did exceed the warranty Double L was authorized to extend on behalf of BCM. Double L argues that it only extended the warranty approved by BCM. Whose story will be accepted is for the jury to decide.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that BCM's motion for summary judgment must be denied in its entirety.

Dated this 13th day of July, 2004.

Dustan J. Cross #248952
Peter D. Favorite #0301036
GISLASON & HUNTER LLP
Attorneys for Plaintiffs
2700 South Broadway
P. O. Box 458
New Ulm, MN 56073-0458
Phone: 507-354-3111

NULIB:180397.1